[No. D039515. Fourth Dist., Div. One. Sept. 4, 2002.]

In re L. Y. L., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
L. L., Defendant and Appellant.

**COUNSEL**

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.

Christopher Blake, under appointment by the Court of Appeal, for the Minor.

## OPINION

**McDONALD, J.**—L. L. appeals a judgment terminating her parental rights to her daughter, L. Y. L., under Welfare and Institutions Code section 366.26.[1] L. contends she established two exceptions to terminating parental rights: the recently enacted section 366.26, subdivision (c)(1)(E) sibling relationship exception and the section 366.26, subdivision (c)(1)(A) beneficial relationship exception. She also contends she received ineffective assistance of counsel because her counsel did not object to the adoption assessment report on which the court based its finding that L. Y. was likely to be adopted. She asserts the report did not contain required information about the prospective adoptive parents. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In January 1999 the San Diego County Health and Human Services Agency (the Agency) removed four-year-old L. Y. and her younger brother J. R.[2] from L.'s custody and filed section 300 petitions on their behalf, alleging L. physically harmed and excessively disciplined L. Y. In March 1999 the court made a true finding on the petitions and the next month ordered reunification services. In December 1999 the court granted L. Y. a 60-day trial visit with L.[3] Because the visit went well, L. Y. was placed with L.

In October 2000 the Agency filed a section 387 supplemental petition on L. Y.'s behalf, asserting L. was no longer able to care for her because L. Y.'s stepfather, Jaime R., repeatedly hit her with a belt.[4] In December 2000 the court made a true finding on the petition and ordered reunification services. At the July 2001 18-month review hearing, the court terminated reunification services and scheduled a section 366.26 hearing.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] J. is not a subject of this appeal.

[3] One month earlier, the court had terminated its jurisdiction over J.

[4] The Agency also removed J. from the home and filed a new section 300 petition as to him.

At the January 2002 section 366.26 hearing, the court found by clear and convincing evidence that L. Y. was likely to be adopted and termination of parental rights would not be detrimental to L. Y. because none of the section 366.26, subdivision (c)(1) exceptions applied. The court terminated L.'s parental rights to L. Y.

DISCUSSION

I

"Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 [32 Cal.Rptr.2d 535].) If the court finds a minor cannot be returned to his or her parent and is likely to be adopted if parental rights are terminated, it must select adoption as the permanent plan unless it finds termination of parental rights would be detrimental to the minor under one of five specified exceptions. (§ 366.26, subd. (c)(1); *In re Jamie R.* (2001) 90 Cal.App.4th 766, 773 [109 Cal.Rptr.2d 123].)

L. contends substantial evidence does not support the court's finding that the section 366.26, subdivision (c)(1)(A) and (c)(1)(E) exceptions did not apply. Because the contention asserts inadequate evidentiary proof, we apply the substantial evidence standard of review. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2001) ¶ 8:88, p. 8-33; see also *In re Autumn H., supra,* 27 Cal.App.4th at p. 575.)

The issue of sufficiency of the evidence in dependency cases is governed by the same rules that apply to other appeals. If there is substantial evidence to support the findings of the juvenile court, we uphold those findings. (*In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534 [84 Cal.Rptr.2d 505].) We do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion. (*In re Autumn H., supra,* 27 Cal.App.4th at p. 576.) The appellant has the burden of showing the finding or order is not supported by substantial evidence. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420 [159 Cal.Rptr. 460].)

A

The section 366.26, subdivision (c)(1)(E) exception to termination of parental rights, effective in January 2002, provides: "There would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to,

whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(E).)

1.

The Agency contends a parent does not have standing to assert the section 366.26, subdivision (c)(1)(E) sibling relationship exception to the termination of parental rights because the exception does not address the parent-child relationship. Generally, a parent who is an aggrieved party may appeal a judgment in a juvenile dependency matter. (*In re Frank L.* (2000) 81 Cal.App.4th 700, 703 [97 Cal.Rptr.2d 88].) To be aggrieved, a party must have a legally cognizable interest that is injuriously affected by the court's decision. (*In re Carissa G.* (1999) 76 Cal.App.4th 731, 734 [90 Cal.Rptr.2d 561].) The injury must be immediate and substantial, and not nominal or remote. (*In re Joshua S.* (1986) 186 Cal.App.3d 147, 150 [230 Cal.Rptr. 437].) We liberally construe the issue of standing and resolve doubts in favor of the right to appeal. (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 540 [104 Cal.Rptr.2d 686].)

If the court finds the section 366.26, subdivision (c)(1)(E) exception does not apply and parental rights are terminated, or if it finds the section 366.26, subdivision (c)(1)(E) exception does apply and parental rights are not terminated, an immediate and substantial consequence results to the parent's legally cognizable interest in the relationship with his or her child. Although the factual evidence necessary to establish the exception does not directly relate to the child's relationship with his or her parent, the parent's right to the child is directly impacted by a determination of the applicability of the exception. It therefore appears the parent has standing to assert the subdivision (c)(1)(E) exception to termination of parental rights because the parent under general standing requirements is a party directly aggrieved by a decision on the issue.

The Agency argues the section 366.26, subdivision (c)(1)(E) exception relates to sibling, not parental, relationships and the parent has no standing to assert a sibling's interest. However, the Agency admits in its appellate brief that one of the arguments in support of parental standing in this case is that "[n]o one seriously contends a parent cannot raise the exception to the termination of parental rights found in the other four exceptions . . . in subdivisions (c)(1)(A)-(D) of section 366.26." Three of the other four exceptions do not relate to the parent's relationship with his or her child. Those

exceptions address an older child's objection to being adopted (§ 366.26, subd. (c)(1)(B)), a child's placement in residential treatment (§ 366.26, subd. (c)(1)(C)), and a child's placement with a relative or foster parent who cannot adopt the child (§ 366.26, subd. (c)(1)(D)).

During oral argument Agency's counsel, citing *In re Devin M.* (1997) 58 Cal.App.4th 1538 [68 Cal.Rptr.2d 666], suggested a parent does not have standing to assert the section 366.26, subdivision (c)(1)(D) exception and therefore does not have standing to assert the subdivision (c)(1)(E) exception, because the parent-child relationship is not in issue in either exception. Although the language of *Devin M.* lends support to Agency's oral argument position, the holding of the case does not. The *Devin M.* court stated that "a parent does not have standing to challenge the order terminating his or her parental rights on the ground that the order results in the severance of the minor's relationship with siblings and/or grandparents." (*Devin M.,* at p. 1541.) However, at the time of the *Devin M.* opinion, severance of the minor's relationship with siblings was not a ground for denying termination of parental rights regardless of who raised the issue. Therefore, the standing of the parents to raise the issue was unnecessary to the decision. Furthermore, the *Devin M.* court noted that the exception to termination of parental rights set forth in section 366.26, subdivision (c)(1)(D) was not applicable because the minor in that case was less than six years of age. (*Devin M.,* at p. 1542, fn. 2.) The issue of whether a parent has standing to raise the subdivision (c)(1)(D) exception was not present in the case.

In contrast to the standing approach articulated in the *Devin M.* opinion, we conclude the proper analysis is contained in the opinion of this court in *In re Tabatha G.* (1996) 45 Cal.App.4th 1159 [53 Cal.Rptr.2d 93]. In *Tabatha,* the parent opposed termination of parental rights on the ground of the best interests of the minor based on the minor's relationship with a grandmother. The *Tabatha* court did not address the parent's standing to make this assertion but rather held that a minor-grandmother relationship was not a basis to deny termination of parental rights; that relationship is not one of the four exceptions listed in section 366.26, subdivision (c)(1)(A)-(D). (*Tabatha,* at p. 1164.) The *Tabatha* court stated: "In order for the court to select and implement adoption as the permanent plan, it must find, by clear and convincing evidence, the minor will likely be adopted if parental rights are terminated. (§ 366.26, subd. (c)(1).) The parent then has the burden to show termination would be detrimental to the minor under one of four specified exceptions. (§ 366.26, subd. (c)(1)(A), (D).)" (*Ibid.*) If the parent has the burden of establishing one of the four subdivision (c)(1)(A)-(D) exceptions to termination of parental rights, the parent must have standing to assert the exception. To the extent *In re Devin M., supra,* 58 Cal.App.4th 1538, may be

interpreted to the contrary, we disagree with it. The parent has standing to contest these issues because an evidentiary finding on those subdivisions affects whether the parent retains parental rights to the child.

The Agency relies on authorities in which courts have held a parent does not have standing to raise issues that address a child's relationship with his or her siblings or other relatives. (See, e.g., *In re Frank L., supra*, 81 Cal.App.4th at p. 703; *In re Nachelle S.* (1996) 41 Cal.App.4th 1557, 1561 [49 Cal.Rptr.2d 200]; *In re Gary P.* (1995) 40 Cal.App.4th 875, 877 [46 Cal.Rptr.2d 929]; *In re Daniel D.* (1994) 24 Cal.App.4th 1823, 1835-1836 [30 Cal.Rptr.2d 245]; *In re Daniel H.* (2002) 99 Cal.App.4th 804 [121 Cal.Rptr.2d 475].) However, none of those authorities arose in the context of determining whether the parent had standing to address a section 366.26, subdivision (c)(1) exception to termination of parental rights. (*In re Frank L., supra*, 81 Cal.App.4th at p. 703 [parent did not have standing to raise a child's ability to visit siblings after the child was placed in long-term foster care]; *In re Nachelle S., supra*, 41 Cal.App.4th at pp. 1561-1562 [parent did not have standing to raise the child's right to visit her siblings after parental rights were terminated]; *In re Gary P., supra*, 40 Cal.App.4th at p. 877 [parent did not have standing to assert terminating her parental rights interfered with her child's relationship with his grandmother]; *In re Daniel D., supra*, 24 Cal.App.4th at p. 1835 [parent did not have standing to challenge the court's denial of de facto parent status to child's grandmother]; *In re Daniel H., supra,* 99 Cal.App.4th 804 [parent did not have standing to raise issue of sibling visitation in connection with termination of parental rights, but suggesting a contrary result following the effective date of § 366.26, subd. (c)(1)(E)].)

The Agency also contends the Legislature did not intend parents to have standing to assert the section 366.26, subdivision (c)(1)(E) exception because the bill's author wrote that use of the new exception "will likely be rare." (Assemblymember Darrell Steinberg, letter to Gov. Davis re Assem. Bill No. 705 (2001-2002 Reg. Sess.) Sept. 19, 2001.) However, we believe this language refers to the opinion of the bill's author that the child's relationship with his or her siblings would rarely be sufficiently strong to outweigh the benefits of adoption.

The Agency also contends the Legislature did not intend a parent to have standing because on a letter challenging the proposed amendment, there is a handwritten note indicating "no standing." (Gary C. Seiser, letter to Assemblymember Darrell Steinberg re Assem. Bill No. 705 (2001-2002 Reg. Sess.) June 27, 2001.) However, we cannot determine who wrote this note and its meaning is unclear. Because L.'s parental rights are directly impacted by the

court's finding the sibling relationship exception did not apply, she has standing to assert the applicability of the section 366.26, subdivision (c)(1)(E) exception.

We conclude a parent has standing to assert the section 366.26, subdivision (c)(1)(E) exception to the termination of parental rights to the same extent the parent has standing to assert the subdivision (c)(1)(A)-(D) exceptions to termination of parental rights. A determination of each of those exceptions directly affects the parent's interest in the relationship with the minor; the parent is an aggrieved party in that determination.

2.

There are no reported cases addressing the standard the court must use to determine whether, under section 366.26, subdivision (c)(1)(E), termination of the child-sibling relationship is sufficiently detrimental to the child to preclude termination of parental rights. We therefore treat the question as one of first impression.

Section 366.26, subdivision (c)(1)(E) provides that if the parent makes a sufficient evidentiary showing (see *In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1119-1120 [118 Cal.Rptr.2d 873]), the court must consider the nature and extent of the sibling relationship, "including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(E).)

This language is strikingly similar to this court's language in *In re Autumn H., supra,* 27 Cal.App.4th at page 575, from which we infer the Legislature intended the courts under the section 366.26, subdivision (c)(1)(E) exception to balance the benefit of the child's relationship with his or her siblings against the benefit to the child of gaining a permanent home by adoption in the same manner the court balances the benefit of the child's continued relationship with the parent against the benefit to the child of gaining a permanent home by adoption when considering the section 366.26, subdivision (c)(1)(A) exception. The court must balance the beneficial interest of the child in maintaining the sibling relationship, which might leave the child in a tenuous guardianship or foster home placement, against the sense of security and belonging adoption and a new home would confer. (*Autumn H.,* at p. 575.)

Under section 366.26, subdivision (c)(1)(E), the court is directed first to determine whether terminating parental rights would substantially interfere

with the sibling relationship by evaluating the nature and extent of the relationship, including whether the child and sibling were raised in the same house, shared significant common experiences or have existing close and strong bonds. (§ 366.26, subd. (c)(1)(E).) If the court determines terminating parental rights would substantially interfere with the sibling relationship, the court is then directed to weigh the child's best interest in continuing that sibling relationship against the benefit the child would receive by the permanency of adoption. (§ 366.26, subd. (c)(1)(E).)

To show a substantial interference with a sibling relationship the parent must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child.[5] Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship. To determine the significance of the sibling relationship, the court considers the factors set forth in section 366.26, subdivision (c)(1)(E).[6] Here, by the time of the section 366.26 hearing, L. Y. and J. had lived with L. for 14 months and with the foster parents for 14 months, where they remain. The record reflects L. Y. and J. had similar experiences while living in the same foster home, were physically abused by L. and Jaime and had been through the dependency process together. The social worker believed L. Y. loved J. and they were very close. L. Y. said she would be sad if J. lived with L. and would miss him and worry about his safety. L. Y. and J. had a relationship and had lived together most of their lives. However, there was no evidence L. Y., other than being sad, would suffer detriment if the relationship ended. We conclude L. has not sustained her burden of proof that termination of her parental rights to L. Y. would substantially interfere with L. Y.'s sibling relationship with J.

Moreover, even if a sibling relationship exists that is so strong that its severance would cause the child detriment, the court then weighs the benefit to the child of continuing the sibling relationship against the benefit to the

[5]On its own motion, this court took judicial notice of J.'s dependency file to consider this issue. Here, L. Y.'s foster family and prospective adoptive parents agreed to continue contact between L. Y. and J. if he reunifies with L. If the foster parents could not adopt L. Y., the social worker would seek an adoptive home that would allow L. Y. to have contact with J. However, J. has not reunified with L. The court terminated services in May 2002 and scheduled a section 366.26 hearing in September 2002. L.'s California Rules of Court, rule 39.1B petition for a writ of mandate from the referral order was dismissed by this court in June 2002. (*L. L. v. Superior Court* (Super. Ct. San Diego County, 2002, No. D040119) [order of dismissal].)

[6]However, as the Legislature noted, the list in the statute is not exclusive. (§ 366.26, subd. (c)(1)(E).)

child adoption would provide. If parental rights are terminated here, L. Y. gains a permanent home through adoption. If parental rights are not terminated, she loses the permanent home her foster and prospective adoptive parents are ready to provide for her. As an older child she might not be considered adoptable if the Agency sought to terminate parental rights at a later time. Moreover, L. Y.'s ability to reunify with L. if placed in guardianship or long-term foster care is remote because L. does not love and does not want custody of her. Valuing L. Y.'s continuing relationship with J. over adoption would deprive her of the ability to belong to a family, which is not in her best interests. Further, L. Y. understood the court was not placing J. at the same time it placed her and wanted to be adopted even if that ended her relationship with J. The extent of the benefits of continuing L. Y.'s sibling relationship with J. are unclear on the record in this case. Substantial evidence supports the court's conclusion that the benefits of adoption outweighed the benefits of the continuing L. Y.'s relationship with J., even if it be assumed that termination of parental rights would result in a substantial interference with the sibling relationship.

B

The section 366.26, subdivision (c)(1)(A) exception applies if termination of parental rights would be detrimental to the child because "[t]he parents . . . have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

 We assume L. regularly visited L. Y. and the issue before us is whether the relationship between them was beneficial to the child. We have interpreted the phrase "benefit from continuing the relationship" to refer to a "parent-child" relationship that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H., supra,* 27 Cal.App.4th at p. 575; accord, *In re Zachary G.* (1999) 77 Cal.App.4th 799, 811 [92 Cal.Rptr.2d 20].)

To meet the burden of proof for the section 366.26, subdivision (c)(1)(A) exception, the parent must show more than frequent and loving contact or

pleasant visits. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827 [86 Cal.Rptr.2d 739].) "Interaction between natural parent and child will always confer some incidental benefit to the child. . . . The relationship arises from day-to-day interaction, companionship and shared experiences. [Citation.]" (*In re Autumn H., supra,* 27 Cal.App.4th at p. 575.) The parent must show he or she occupies a parental role in the child's life, resulting in a significant, positive, emotional attachment from child to parent. (*Ibid.; In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 324 [60 Cal.Rptr.2d 557].)

 Here, L. Y. did not view L. as a parent. L. Y. said L. did not take care of her, treat her well, feed her, tell her she loved her, help her with homework, keep her healthy, or help her if she had a problem. She believed L. did not love her. L. Y. rarely told L. about her school or activities. She did not trust her or rely on her for direction or assistance. As a result of L.'s actions, L. Y. feared being hurt, lacked trust, was confused and anxious, and displayed symptoms of posttraumatic stress disorder. She has enuresis, oppositional behaviors, low self-esteem, and problems in school.

L. Y. did not want to visit L. and became upset when required to do so. During visits she was uncomfortable and refused to sit by L. or respond to her requests. She did not wear a belt to visits because she was afraid L. would hit her with it. She did not say goodbye at the end of visits and often refused to kiss L.; she never kissed L. voluntarily. She separated easily after visits. After visits, she was irritable, enuretic, and had temper tantrums. Once visits stopped in early November 2001, her behavior improved, her moods stabilized, she had no nightmares, and she seemed happier.

L. Y. was also bonded with her foster parents. She asked them to call her "daughter." She wanted them to adopt her because they loved her and took care of her. They treated her as a parent should and met her daily physical and emotional needs.[7]

L. did not act parentally. During visits, she did not ask about L. Y.'s school or activities and rarely communicated or interacted with her. She did not discipline, instruct, or give her attention. When L. Y. was crying, L. refused to hold or comfort her. Her judgment was immature. She knew Jaime had beaten L. Y., but did not report it and warned L. Y. not to tell anyone about the incident.

---

[7]L. contends that L. Y. wanted to live with her foster parents because they took her on vacation and to theme parks. However, L. Y. articulated she wanted to be with her foster parents because they met her physical and emotional needs.

L. was not interested in L. Y. During visits, she did not pay attention to her, choosing to focus her attention on J. She brought gifts for only him. During one visit when J. was not present, L. interacted with L. Y. only to ask her about J., instead talking to the case aide and the foster father. When she called the foster home, she asked to speak to J., but not L. Y.

L. contends a beneficial relationship exists because L. Y. said she would be sad if she no longer saw L. and admitted it would be "hard" not to see her again. She also contends L. Y. had strong feelings about her because she wanted L. to pay more attention to her and got angry with her for not doing so. However, the child's disappointment does not establish a beneficial relationship. L. Y. acted poorly when she saw L. and acted well when she did not. She was upset by and frightened of L. She repeatedly stated she wanted to be adopted. Moreover, even if a child loves his or her parents, the court may nonetheless terminate parental rights if doing so is in the child's best interests. (§ 366.26, subd. (h).)

Further, no expert believed L. Y.'s relationship with L. was beneficial. From the beginning of the case, the professionals observed that L. and L. Y. were not bonded. L. Y.'s therapist believed L. did not sufficiently nurture L. Y. and acted in a distant and aloof manner with the child. She believed visiting with L. was detrimental to the child because L. ignored and scared her. L. contends this evidence is not credible because the therapist had previously expressed a positive opinion of L. and the psychologist who performed the psychological evaluation believed otherwise. However, by its ruling we infer the court found the therapist was credible, a determination we may not reweigh. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53 [82 Cal.Rptr.2d 426].)

The social worker believed L. Y. did not have a beneficial relationship with L. because she did not meet L. Y.'s daily physical and emotional needs and did not provide her with trust, security, or stability. L. introduced no contrary expert evidence. Substantial evidence supports the court's finding that the section 366.26, subdivision (c)(1)(A) exception did not apply.

## II

L. contends her counsel was ineffective by not challenging the adoption assessment report, which she asserts inadequately described the

prospective adoptive parents.[8] To succeed in this claim she must establish she was prejudiced by counsel's asserted failure to challenge the assessment report. (*In re Arturo A.* (1992) 8 Cal.App.4th 229, 237 [10 Cal.Rptr.2d 131].)

 If there is no probability a child will reunify with his or her parents, adoption is the Legislature's preferred plan. (*In re Heather B.* (1992) 9 Cal.App.4th 535, 546 [11 Cal.Rptr.2d 891].) To select and implement adoption as a child's permanent plan, the court must first find, by clear and convincing evidence, it is likely the child will be adopted if parental rights are terminated. (§ 366.26, subd. (c)(1).) To determine whether a child is adoptable, the court focuses on whether the child's age, physical condition, and emotional state will create difficulty in locating a family willing to adopt the child. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649 [28 Cal.Rptr.2d 82].)

 Here, the evidence showed L. Y. was adoptable because she was female, in good health, developing normally, and had a sociable personality. Moreover, she had no beneficial relationship with L. and her foster parents were willing to adopt her.

 Further, for a child who is generally adoptable, as the evidence shows L. Y. is, neither a child's placement in a potential adoptive home nor the availability of prospective adoptive parents "waiting in the wings" is a prerequisite to finding adoptability. (*In re Sarah M., supra,* 22 Cal.App.4th at p. 1649.) All that is required is clear and convincing evidence of the likelihood the child will be adopted within a reasonable time. (*In re Jennilee T.* (1992) 3 Cal.App.4th 212, 223-225 [4 Cal.Rptr.2d 101].) Here, in addition to L. Y.'s foster parents, there were six families willing to adopt a child with her characteristics, which sufficiently demonstrates she was likely to be adopted within a reasonable time.

 In any event, L. Y.'s prospective adoptive parents are licensed foster parents and have already been screened for the factors required in the assessment report. (See *In re Diana G.* (1992) 10 Cal.App.4th 1468, 1481-1482 [13 Cal.Rptr.2d 645].) More screening will occur if they proceed with the adoption, making any deficiencies in the assessment report moot and any error by the court harmless. (*Ibid.*) L. has not demonstrated prejudice as a result of her counsel not challenging the adequacy of the adoption assessment report.

---

[8]L. admits she waived the right to contest the adequacy of the assessment report by not raising the issue below. (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 411 [15 Cal.Rptr.2d 613].)

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and O'Rourke, J., concurred.

A petition for a rehearing was denied October 2, 2002, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 13, 2002.