Filed 5/9/13  Conservatorship of Johnston CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| Conservatorship of the Person and Estate of WARDELL D. JOHNSTON, JR. | |
| KENNETH SEASTROM,<br><br>　　　Petitioner and Appellant,<br><br>v.<br><br>KIM SCHWARCZ,<br><br>　　　Objector and Respondent. | A133734<br><br>(Marin County<br>Super. Ct. No. PR074020) |

Kenneth Seastrom, the Conservator of the Person for Wardell D. Johnston, Jr.,
appeals from an order granting the Petition for Order to Sell Residence of Conservatee
filed by Johnston's Conservator of the Estate, Kim Schwarcz.  Appellant contends the
trial court erred, and violated his due process rights, in granting respondent's petition and
authorizing sale of Johnston's home without an evidentiary hearing.  He additionally
seeks remand on the ground that proper notice was not given to Johnston.  We agree with
respondent's contention that appellant lacks standing to bring this appeal and, therefore,
affirm.

**STATEMENT OF THE CASE AND FACTS**

Wardell Johnston, Jr., is an elderly man suffering from dementia and other
medical conditions, presently living at the Silverado Senior Living facility in Belmont.

1

Appellant, Kenneth Seastrom, a long-time friend of Johnston's, was appointed Conservator of the Person for Johnston in October 2007. Johnston's court-appointed attorney opposed appellant being appointed conservator of the estate, believing a fiduciary should serve in that role. Shortly thereafter, respondent, Kim Schwarcz, a professional fiduciary, was appointed Conservator of the Estate.

In August 2008, respondent sought an order to sell Johnston's house. Johnston had been living in care facilities since 2007, and respondent informed the court that his house was in "bad shape," she had received bids for repairs in the amount of $250,000, and it was going to be difficult to maintain insurance on the property. Photographs of the house reflect the extent of Johnston's hoarding behavior. The court denied the petition without prejudice, finding that financial need for sale had not been justified and the conservatee had to be asked directly about the proposed sale. Respondent proceeded with repairs and renovations of the property.

On November 19, 2010, respondent filed a petition seeking instruction whether to lease the property or have it remain vacant in case Johnston was able to return to live there. Respondent stated that Johnston had been living at the Silverado Senior Living facility in Belmont since May 2008. He was 89 years old, suffered from dementia and multiple medical conditions requiring daily medication and supervision, was happy and well cared for at the facility, and enjoyed social activities there; respondent had been advised by Johnston's attorney and physician that in their opinion it would not be in Johnston's best interest to return to his home, and this view was shared by the court's investigator.

Appellant filed objections to the petition. His declaration stated that it had always been his goal to get Johnston's home cleaned and repaired so that Johnston could return to live there, and that Johnston had consistently expressed his desire to move back home. Appellant described efforts he made to this end, and ways that respondent was attempting to make this option unavailable. Appellant provided reports and communications from several of Johnston's physicians opining that it would be safe for Johnston to live at

2

home provided he had 24 hour a day care. Appellant stated that he had contacted a professional care manager, who had visited Johnston, performed an informal assessment, and was ready to assume the role of care manager for Johnston in his home, and had arranged for Johnston to participate in Senior Access Adult Services in addition to private activities provided by appellant and Johnston's caregivers.

In a declaration filed on February 28, 2011, Johnston's attorney, Pauline Sloan, opined that Silverado was the least restrictive placement for him and residing there was in his best interest. Sloan stated that when she visited Johnston in August and in December, he expressed no desire to relocate and said he liked Silverado because there were " 'lots of things to do.' " Sloan expressed concern about appellant's judgment regarding Johnston's best interest, noting an occasion on which appellant took Johnston to the construction site at the Mill Valley residence without contacting the contractor, when the conditions there were dangerous, and a time when appellant opposed Johnston's primary care physician's order for a nebulizer to treat Johnston's respiratory issues.

Respondent's brief addressed the physical attributes of Johnston's residence and further renovations required to make it safe for him to live there in light of his physical disabilities and dementia; the potential consequences of removing Johnston from the social environment at Silverado and returning him to a home that would not be familiar due to the significant cleanup and remodel; and the comparative economics of leaving the house vacant, leasing it and selling it.

An evidentiary hearing was held on March 1, March 3, May 27, and June 27, 2011, with testimony from Johnston's physician, Johnston's attorney, Johnston, appellant, respondent and several other witnesses. The reporter's transcript has not been included in the record on appeal. The register of actions recites the court's conclusion that Johnston "has severe short term memory impairment and medical issues. Returning the conservatee to his home would be more restrictive than his placement in San Mateo insofar as the conservatee would need 24 hour a day care. The court also notes that this level of in home care would be inordinately expensive." The court ordered that Johnston

not be returned to his home and directed respondent to arrange for sale or lease of the residence after meeting with legal and financial counsel as appropriate.

On September 8, 2011, respondent filed a Petition for Order to Sell Residence of Conservatee and for Exclusive Listing, stating that after consultation with a tax attorney about advantages or disadvantages of selling or leasing the residence, she believed it to be in the best interest of the estate for the property to be sold. She subsequently filed a declaration relating her interview with Johnston about sale of the residence. The interview took place at Silverado, in the presence of Johnston's physician. Respondent asked Johnston where he lived and he replied, " 'here,' " and when she asked if it would be okay to sell his house, he said he did not want to. Responding to a question from the physician about whether he had bills, Johnston said his only one was for rent. He said that he spent weekends at the house and had furniture there, although in fact the house is unfurnished and he does not spend weekends there.

Appellant opposed the petition. Among other things, he denied that it was in Johnston's best interest to sell the home, stated that Johnston yearned for his home and did not want to sell it, and objected to hearsay statements in the petition about the appraisal and tax consequences of selling the property. Appellant stated as affirmative defenses that it was in Johnston's best interest to rent the residence, which appellant would establish could generate monthly rent of $5,000 to $5,500, and that respondent had violated her fiduciary duty to ascertain the income producing potential of the home. He asked that the petition be denied because respondent did not give adequate notice, talk to Johnston in the last three years about selling the house or allege facts showing it was in Johnston's best interest to sell. Appellant also filed objections to the petition, including that notice was sent to " 'Veronica Arellano for Wardell D. Johnston, Jr.' " instead of directly to Johnston as required by law and that "petitions, declarations or affidavits" should not be considered as evidence, and demanded an evidentiary hearing and trial and the opportunity to confront and cross-examine witnesses and to testify and present witness testimony.

4

After a hearing on October 3, the court found that respondent had standing to bring the petition; that evidence supported the finding that sale of the residence " 'is for the advantage, benefit, and best interest' of the Conservatee, a 90 year old man with debilitating illnesses who no longer has the ability to live at his residence"; that the listing agreement for sale of the property was in conformity with court rules; and that notice of the petition has been given as required by law. The register of actions notes that "the court does not find that an eviden[t]iary hearing would result in a different decision." By order filed on October 24, 2011, the court overruled appellant's objection to admission or consideration of declarations, denied his request to examine witnesses and authorized respondent to sell the residence.

Appellant filed his notice of appeal on November 10, 2011. He elected to proceed without a reporter's transcript.

## DISCUSSION

Although presented as the last of her arguments in support of the order authorizing sale of the property, we find dispositive respondent's contention that appellant lacks standing to maintain this appeal.

"[O]nly a person aggrieved by a decision may appeal. (E.g., *In re L. Y. L.* (2002) 101 Cal.App.4th 942, 948; cf. Code Civ. Proc., § 902 ['Any party aggrieved may appeal . . . .'].) An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. (*In re L. Y. L., supra,* at p. 948; see *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737; *Estate of Colton* (1912) 164 Cal. 1, 5.)" (*In re K.C.* (2011) 52 Cal.4th 231, 236.) To determine whether a party is aggrieved by the trial court's order, the reviewing court must "precisely identify" the appealing party's interest in the matter. (*Ibid.*)

As conservator of Johnston's person, appellant's role is to manage Johnston's care, custody and education, including matters such as where Johnston resides and what

5

medical treatment he receives. (Prob. Code, §§ 2350, 2351, 2352, 2355.)[1] Respondent, as conservator of the estate, has the authority to make financial decisions regarding the estate. (E.g., §§ 2400, 2401, 2451.5, 2500, 2570, 2591.) Prior to the June 27, 2011, order establishing that Johnston would not return to live at home, appellant had a clear interest in the treatment and disposition of Johnston's home as a potential place for Johnston to reside. Once it was established that Johnston would not live there, however, the interest appellant sought to protect—the ability for Johnston to live at home—was no longer at issue. The property became simply an asset of the estate, the only question being the relative financial merits of selling or leasing it. Respondent, not appellant, is responsible for managing the assets of the estate.[2]

Appellant contends he has standing as an "interested person" and a "fiduciary representing an interested person" under section 48, subdivision (a)(1) and (3). Under section 1043, which refers generally to hearings under the Probate Code (§ 1040), an "interested person may appear and make a response or objection in writing at or before the hearing" (§ 1043, subd. (a)) and "may appear and make a response or objection orally at the hearing." (§ 1043, subd. (b).)

Subdivision (a)(1) of section 48 provides that an " 'interested person' " includes "[a]n heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." Appellant does not explain how he falls within this provision and we fail to see how he would come within its terms.

---

[1] All statutory references are to the Probate Code, unless otherwise indicated.

[2] Appellant does not claim any error with respect to (or even discuss) the order that Johnston not return to live at home. Although his notice of appeal states that the appeal is from the June 27, 2011, order as well as the October 24, 2011, order authorizing the sale, appellant's briefs on appeal state that he is appealing the October 24, 2011, order without reference to the June 27 order, and his arguments are directed entirely to the October 24 order.

Subdivision (a)(3) of section 48 includes within the definition of " 'interested person' " a "fiduciary representing an interested person."  The Probate Code defines " 'fiduciary' " as "personal representative, trustee, guardian, conservator, attorney-in-fact under a power of attorney, custodian under the California Uniform Transfer To Minors Act (Part 9 (commencing with Section 3900) of Division 4), or other legal representative subject to this code."  (§ 39.)  Although appellant is Johnston's conservator, he is *only* conservator of the person.  The matters as to which he represents Johnston, therefore, are limited to those affecting Johnston's care and control (§ 2351).  Appellant's representation of Johnston's interests does not extend into the purview of the separate conservator of the estate, respondent.  With respect to the subject matter of this appeal— the October 24, 2011, order authorizing sale of Johnston's residence—appellant is not an "interested party" whose interests were adversely affected by the decision.  He has no standing to appeal.

The order is affirmed.


_____
Kline, P.J.


We concur:


_____
Haerle, J.

_____
Lambden, J.

7