Filed 7/13/22  In re Beautifull C. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re BEAUTIFULL C., a Person Coming Under the Juvenile Court Law. | B315748 |
| | (Los Angeles County Super. Ct. No. 20LJJP00482A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PRICILLA R., et al.<br><br>    Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephanie M. Davis, Juvenile Court Referee.  Affirmed.

Annie Greenleaf, under appointment by the Court of Appeal, for Defendant and Appellant Pricilla R.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant Johnny C.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Pricilla R. and Johnny C. appeal from the juvenile court's orders under Welfare and Institutions Code section 366.26 terminating their parental rights to their daughter, Beautifull C.[1] They contend that the court abused its discretion in denying their requests for a contested hearing and that the Department's unclean hands barred it from arguing they did not have a sufficient bond with Beautifull. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Beautifull Tests Positive for Methamphetamine at Birth; the Department Files a Petition Under Section 300, Subdivisions (b)(1) and (j); and the Juvenile Court Sustains the Petition and Removes Her*

When Pricilla gave birth to Beautifull in July 2020, they both tested positive for methamphetamine. Pricilla denied abusing drugs and claimed a friend gave her a cup of coffee that "must have been spiked with [m]ethamphetamines." Johnny denied seeing Pricilla use drugs. One week later, the Los Angeles County Department of Children and Family Services filed a petition under section 300, subdivision (b)(1), alleging that Pricilla's substance abuse placed Beautifull at risk of serious

---

[1]    Statutory references are to the Welfare and Institutions Code.

2

physical harm and interfered with Pricilla's ability to provide regular care for Beautifull, that Johnny failed to protect Beautifull from Pricilla's substance abuse, and that Johnny's substance abuse interfered with his ability to provide regular care for Beautifull. The Department also alleged under section 300, subdivision (j), that Beautifull's older sister, Jaylene C., was a dependent child of the court due to Pricilla's and Johnny's substance abuse and that Pricilla's and Johnny's substance abuse endangered Beautifull's physical health and safety. The juvenile court detained Beautifull, granted the Department custody for placement, and ordered monitored visitation for Pricilla and Johnny.[2]

The social worker gave Pricilla the contact information of Beautifull's caregivers so that Pricilla could "set up visitation" three times a week. Pricilla told the social worker to give the caregivers the following message: "'Don't get comfortable.'" The social worker gave Johnny (and Pricilla again) the same information and encouraged him to "arrange for in person visits" three times a week.

On September 23, 2020 the court sustained the allegations in the petition and found Beautifull was a person described by section 300, subdivisions (b) and (j). For the disposition hearing one month later, the Department reported that both Pricilla and Johnny failed to complete the drug testing ordered by the court. At disposition, the court removed Beautifull from Pricilla and Johnny. The Department informed the court that, in a separate dependency case involving Jaylene, the court had terminated

_____

[2] At the time of the detention hearing, Beautifull was still in the neonatal intensive care unit with a sepsis infection and feeding difficulties. Since her discharge from the hospital, Lourdes A. and Hildebrando A. have cared for Beautifull.

Pricilla's and Johnny's reunification services and their parental rights to Jaylene. The court in this case denied Pricilla and Johnny reunification services under section 361.5, subdivision (b)(10) and (b)(11),[3] and set a selection and implementation hearing under section 366.26. The court granted Pricilla's request to continue visiting Beautifull a minimum of three times a week for three hours per visit.

### B. *Pricilla and Johnny Did Not Consistently Visit with Beautifull*

In a February 2021 report the Department stated its investigator had not been able to locate Pricilla or Johnny since December 2020. Over the next two months, the investigator repeatedly tried to serve Pricilla and Johnny with notices of the hearing under section 366.26. When the investigator finally

---

[3] Section 361.5, subdivision (b), provides that reunification services "need not be provided" to a parent or guardian in specified circumstances, including where "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling" and the "parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling" and where "the parental rights of a parent over any sibling or half sibling of the child had been permanently severed, and . . . [the] parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling." (See § 361.5, subd. (b)(10) & (11); see also § 361.5, subd. (c)(2).) Section 361.5, subdivision (f), provides that, if the court does not order reunification services, the court must determine whether to set a hearing under section 366.26. (See *In re M.S.* (2019) 41 Cal.App.5th 568, 587; *In re Jonathan P.* (2014) 226 Cal.App.5th 1240, 1257.)

4

spoke to Pricilla and Johnny on the phone in May 2021, they provided a mailing address, but refused to disclose where they lived or to meet with the investigator. The investigator did not learn where Pricilla and Johnny lived until a social worker in another case contacted the investigator in July 2021 and said that Johnny and Pricilla recently had another baby, Logan C., and that they lived with the maternal grandmother.[4] During these months, Pricilla and Johnny did not visit with Beautifull, in person or virtually.

For the selection and implementation hearing on October 15, 2021, the Department summarized the history of Pricilla's and Johnny's visitation with Beautifull. In the 14 months of the dependency case, Pricilla participated in six virtual visits, four in 2020 and two in 2021, while Johnny participated in one virtual visit in 2020.[5] The social worker arranged for an in-person visit, but Pricilla did not show up. The social worker also offered Pricilla "consistent in-person visits on Saturdays" and additional virtual visits, but Pricilla either "did not respond" or did not confirm the visits. Pricilla asked to visit approximately seven additional times, but either did not confirm the visit or failed to show up. On one occasion Pricilla said she missed the visit because she had technical difficulties with the videoconference platform, and on another occasion she said she had a scheduling conflict.

---

[4] Two months later, in a separate dependency case, the juvenile court detained Logan after Pricilla tested positive for methamphetamine.

[5] A previous report documented one additional virtual visit Pricilla attended. The report indicated Johnny was "reported to be present" during three virtual visits, but the report did not state to what extent he participated in the visits.

C.  *The Court Denies Pricilla's and Johnny's Requests for a Contested Hearing and Terminates Their Parental Rights*

At the hearing under section 366.26, Pricilla and Johnny asked the court to set the matter for a contested hearing. Counsel for Pricilla argued Pricilla and Bernadette L., a maternal great aunt, "could offer testimony with respect to . . . the parent-child bond, as well as the sibling bond."[6]  Counsel stated Pricilla could also testify about "a bond that was interrupted" by the Department's failure "to comply with a minimum visitation order," the "unfortunate circumstances with COVID because of lack of in-person visits," and "the caregivers' own desire to adopt [Beautifull] even from the very beginning."  Counsel for Pricilla asserted "it would be a miscarriage of justice for the Department to argue a lack of bond based on [the] forces which interrupted the ability for [Pricilla] to form a bond."  Counsel for Pricilla also argued the Department presented "contradictory information" on visitation because the February 2021 report indicated "there was no contact between the parents and the caregiver," but the most recent last minute information indicated "numerous entries" of "attempts at visitation, as well as some of the barriers that existed."  Counsel added that Pricilla would provide "information as to the circumstances of these barriers, as well as the specific information about how those visits that did occur, in fact, went

---

[6]  The court denied Pricilla's request to continue the hearing to allow the Department to complete the assessment of Bernadette as a placement option.  An investigation revealed Bernadette suffered a criminal conviction in 2019, the nature of which, according to the social worker, was "concerning."  The court found it would not be in the best interest of Beautifull to delay the proceedings on the slim likelihood Bernadette could obtain a criminal waiver.

with respect to [Beautifull's] connection with [Pricilla]." Counsel for Pricilla argued Beautifull would lose "her ability and opportunity to know her biological family, . . . including siblings that are placed with relatives." Finally, counsel stated that, if the court did not terminate Pricilla's parental rights, Beautifull would enjoy "stability" and "continued family connection."

Counsel for Johnny argued that, "with respect to a sibling bond exception," he wanted Beautifull "to grow up with and around Logan." Counsel stated that, "with respect to . . . the offer of proof for the parent bond," Johnny "was having difficulties with any type of in-person visits because of COVID." Counsel for Johnny asserted that, even though the Department could not locate Johnny in February 2021, after Logan was born in July 2021 the Department had Johnny's contact information, and Johnny had been "trying to work with the social worker since [the] summer to try to get his visits in." Finally, counsel for Johnny claimed that Johnny's visits "have been stymied or stopped by the Department" and that, "[o]nce the Department does allow [Johnny] to have his visits, . . . he does want to continue to have a strong bond with Beautifull."

The juvenile court denied the request for a contested hearing. The court ruled: "There's been absolutely no evidence presented with respect to there being a reason to set the matter for a hearing regarding the sibling exception to adoption" because the sibling bond "has to already exist for the exception to apply. It does not apply in the hopes and happenstance that a sibling relationship will form." The court found the offers of proof on the parental-benefit exception "presented very little facts and a whole lot of argument, which is not what an offer of proof is supposed to do." The court agreed with the Department that, based on "the totality of the reports," there was "no contradictory evidence." The court concluded Pricilla's and Johnny's offers of proof "failed

to provide the necessary information justifying a contested [section 366.26] hearing" because both offers of proof "were basically projections about what would happen. . . . They were arguments about the law, not presenting facts." The court found that Beautifull was adoptable, that it would be detrimental to return her to Pricilla or Johnny, and that no exception to adoption applied. The court terminated Pricilla's and Johnny's parental rights, selected adoption as the permanent plan, and designated Lourdes A. and Hildebrando A. as Beautifull's prospective adoptive parents. Pricilla and Johnny timely appealed.

## DISCUSSION

Pricilla and Johnny argue the court abused its discretion in denying their requests to present evidence at the selection and implementation hearing. Because the offers of proof did not sufficiently specify the evidence Pricilla and Johnny would present, however, the court did not abuse its discretion in denying their request for a contested hearing. Pricilla and Johnny also argue the doctrine of unclean hands precluded the Department from arguing they did not have a sufficient bond or attachment with Beautifull. Pricilla and Johnny, however, forfeited this argument and, in any event, they have not shown the doctrine applies.

A.   *The Juvenile Court Did Not Abuse Its Discretion in Denying a Contested Hearing on the Parental-benefit Exception*

1.   *Applicable Law and Standard of Review*

"If the court cannot safely return a dependent child to a parent's custody within statutory time limits, the court must set a hearing under section 366.26." (*In re Caden C.* (2021) 11 Cal.5th 614, 630; see §§ 361.5, subd. (f), 366.22, subd. (a)(3); *In re M.S.* (2019) 41 Cal.App.5th 568, 580; *In re Jonathan P.* (2014) 226 Cal.App.4th 1240, 1257.)  The goal at the section 366.26 hearing "is 'specifically . . . to select and implement a permanent plan for the child.'" (*Caden C.*, at p. 630; see *In re A.G.* (2020) 58 Cal.App.5th 973, 992.)  Statutory exceptions "'permit the court, in exceptional circumstances [citation], to choose an option other than the norm, which remains adoption.'" (*Caden. C.*, at p. 631; see *In re A.G.*, at p. 992.)

The parental-benefit exception under section 366.26, subdivision (c)(1)(B), applies where "'[t]he court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances:  [¶]  (i)  The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.'" (*In re Caden C.*, *supra*, 11 Cal.5th at p. 631; see *In re L.A.-O.* (2021) 73 Cal.App.5th 197, 206.)  To prove the exception applies, the parent must show "regular visitation and contact with the child, taking into account the extent of visitation permitted"; "the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship"; and "terminating that attachment would be detrimental to the child even when balanced against the

9

countervailing benefit of a new adoptive home." (*Caden C.*, at p. 636; see *In re J.D.* (2021) 70 Cal.App.5th 833, 854.)

"The burden is on the parent asserting the parental [benefit] exception to produce evidence establishing that exception." (*In re A.G.*, *supra*, 58 Cal.App.5th at p. 996; see § 366.26, subd. (c)(1)(B)(i); *In re Caden C.*, *supra*, 11 Cal.5th at p. 635.) The juvenile court "may require, without violating due process, that the parent provide an offer of proof in support of the adoption exception before setting a contested hearing." (*In re A.G.*, at p. 998; see *In re Grace P.* (2017) 8 Cal.App.5th 605, 612 ["'The trial court can . . . exercise its power to request an offer of proof to clearly identify the contested issue(s) so it can determine whether a parent's representation is sufficient to warrant a hearing involving presentation of evidence and confrontation and cross-examination of witness.'"]; *In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1124 ["due process does not preclude the trial court from requiring an offer of proof before a parent offers evidence on a contested issue at a section 366.26 hearing"].)

The offer of proof "must address two components of the parental [benefit] exception, namely, the parent's regular contact with the child, and the existence of a beneficial parent-child relationship." (*In re A.G.*, *supra*, 58 Cal.App.5th at p. 982.) "The parent's offer of proof 'must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued.'" (*In re Grace P.*, *supra*, 8 Cal.App.5th at p. 612; see *In re A.G.*, at pp. 996-997 ["''The judge may properly reject a general or vague offer which does not indicate with precision the evidence to be presented and the witnesses who are to give it'''"; a "proper offer of proof must identify the substance of the evidence to be presented, not merely contain a recitation of facts."].) We review the juvenile court's order denying a request

10

for a contested hearing for abuse of discretion. (*In re A.G.*, at p. 1003; see *Grace P.*, at p. 611.)

2. *The Offers of Proof Did Not Warrant a Contested Hearing on the Parental-benefit Exception*

The juvenile court did not abuse its discretion in denying Pricilla's and Johnny's requests for a contested hearing on the parental-benefit exception because their offers of proof did not identify, with precision or otherwise, the specific evidence they would present at such a hearing. Pricilla's and Johnny's offers of proof did not include specific evidence they had maintained regular and consistent visitation with Beautifull; indeed, neither counsel for Pricilla nor counsel for Johnny even argued Pricilla and Johnny regularly visited Beautifull. Nor did either counsel describe specific evidence Beautifull had a significant emotional attachment to Pricilla or Johnny.

As discussed, a parent's offer of proof must address "regular visitation" and "the existence of a beneficial parent-child relationship." (*In re A.G.*, *supra*, 58 Cal.App.5th at p. 1005; see *In re Grace P.*, *supra*, 8 Cal.App.5th at pp. 613-614.) The offers of proof by Pricilla and Johnny addressed neither. Pricilla's offer of proof consisted of a vague assertion there was a parent-child bond, a recitation of circumstances (including the restrictions imposed by the COVID-19 pandemic) that purportedly interfered with creating or maintaining that bond, and references to portions of the social worker's reports that counsel claimed were contradictory. None of these descriptions provided specific evidence on the elements Pricilla and Johnny had to prove: that they regularly visited Beautifull and that Beautifull developed strong, positive, emotional attachments to them such that it would be beneficial for her to continue the relationships. (See

11

*In re Caden C., supra,* 11 Cal.5th at pp. 632, 636.) For example, Pricilla's assertion she would testify about "how those visits that did occur, in fact, went with respect to [Beautifull's] connection with [Pricilla]" did not address whether Pricilla visited with Beautifull consistently or whether the visits were a positive experience that created a substantial emotional connection. (See *Caden C.,* at p. 632 [in evaluating the significance of the parent-child bond, "courts often consider how children feel about, interact with, look to, or talk about their parents"].)

Johnny's offer of proof, which consisted largely of excuses for not visiting, also failed to provide any specific details. Even his accusation the Department "stymied" his efforts to visit Beautifull lacked substance. For example, counsel for Johnny did not set forth specific evidence of Johnny's attempts to contact the social worker or the caregivers to set up visitation, nor did counsel describe how the Department impeded those efforts. And, like Pricilla's offer of proof, Johnny's did not address the elements he needed to prove under the parental-benefit exception. (Compare *In re A.G., supra,* 58 Cal.App.5th at p. 1013 [mother's offer of proof partially complied with the specificity requirement by stating she would testify that she maintained continuous contact with her child and that the child said he wanted to return home with her, and by indicating she would submit photographs and videotapes showing they had a close relationship]; *In re Grace P., supra,* 8 Cal.App.5th at pp. 610, 615 [juvenile court abused its discretion in denying a father's request for a contested hearing, where counsel's offer of proof stated that the father would testify he consistently and regularly visited his children, who called him "papa," and that the oldest child would testify she "'would be sad if he were not her father'"].)

The record in fact demonstrated both parents' visitation with Beautifull was minimal: Over the course of 14 months,

12

Pricilla participated in five virtual visits in 2020 and two virtual visits in 2021; Johnny participated in one virtual visit in 2020—hardly regular or consistent, given that the court had approved visits at the rate of three times per week. (See *In re Caden C.*, *supra*, 11 Cal.5th at p. 632 ["[t]he question is just whether 'parents visit consistently,' taking into account 'the extent permitted by court orders'"]; *In re A.G.*, *supra*, 58 Cal.App.5th at p. 1010 ["parent's failure to set forth specific evidence, especially with a record negating the parent's regular visitation of the minor, will justify the denial of a hearing"]; *In re Grace P.*, *supra*, 8 Cal.App.5th at p. 614 ["evidence of the nature of the visits would be ineffective in proving a beneficial parent-child relationship, where the parent failed to maintain consistent and frequent contact with the child"]; *In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817 [juvenile court did not err in denying the father an opportunity to cross-examine a social worker about the father's visitation "during an unspecified earlier period" because he had not visited his child for more than one year before the section 366.26 hearing].) The record also showed a pattern of missed scheduled visits and unanswered messages from the social worker to arrange visits.

Pricilla and Johnny argue counsel for Pricilla "set forth actual evidence to be produced," namely, "testimony of [Pricilla] and [Bernadette] of the parent-child bond," the "Department's failure to comply with a minimum visitation order," "Covid preventing the lack of in-person visits," and "the caregivers' desire to adopt [Beautifull] from the beginning." These statements were not evidence of the elements under section 366.26, subdivision (c)(1)(B)(i), that Pricilla and Johnny had the burden to prove. (Compare *In re A.G.*, *supra*, 58 Cal.App.5th at pp. 1012-1013 [mother's offer of proof "included matters that were unquestionably relevant to the parental relationship

13

exception," such as testimony about the activities she shared with her child and the child's wishes]; *In re Grace P., supra,* 8 Cal.App.5th at p. 610 [father's offer of proof included a description of his activities and conversations with his children during his weekly visits].)

And to the extent any obstacles to visitation Pricilla and Johnny faced were relevant to the section 366.36 hearing, Pricilla's offer of proof still lacked specificity. Counsel for Pricilla did not identify any (let alone specific) evidence Pricilla would present to substantiate the conclusory allegation the Department did not comply with the visitation order. For example, neither Pricilla nor Johnny pointed to any proposed testimony that the social worker ignored calls to set up visits in the months when the investigator could not locate the parents or that the social worker frequently cancelled visits either parent had scheduled. (See *In re A.G., supra,* 58 Cal.App.5th at p. 997 [an "'offer of proof should identify the specific evidence being offered (e.g., "Witness X will testify that he heard the defendant state . . ."); and that evidence must be admissible'"].)

Finally, Pricilla and Johnny argue Pricilla's offer of proof stated she "would testify that the . . . report about visitation was incorrect and contradictory." However, counsel for Pricilla did not describe any specific evidence of Pricilla's contrary version of the frequency or quality of the visits. For example, Priscilla and Johnny did not offer any evidence to contradict the social worker's reports showing a string of missed visits, such as a visitation log indicating they actually showed up for those visits. And, as the juvenile court commented, even if the social worker's reports contained inconsistent information, any such inconsistencies would be a matter of argument, not evidence. (See *In re A.G., supra,* 58 Cal.App.5th at p. 996 ["The "'*evidence*'"

14

in an offer of proof shall consist of "'testimony, writings, material objects, or other things presented to the senses.'"'"].)

B. *The Juvenile Court Did Not Abuse Its Discretion in Denying a Contested Hearing on the Sibling-relationship Exception*

The sibling-relationship exception applies where "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v); see *In re Celine R.* (2003) 31 Cal.4th 45, 54; *In re I.R.* (2014) 226 Cal.App.4th 201, 213; *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 951.) "The purpose of the sibling exception is to preserve long-standing sibling relationships that serve as 'anchors for dependent children whose lives are in turmoil.'" (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 781.)

"The parent has the burden of proving the statutory exception applies." (*In re Elizabeth M.*, *supra*, 19 Cal.App.5th at p. 781; see *In re Megan S.* (2002) 104 Cal.App.4th 247, 251-252.) "'To show a substantial interference with a sibling relationship the parent . . . must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child. Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that

15

relationship.'" (*Elizabeth M.*, at p. 781; see *In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 952.) The juvenile court has discretion to require the parent seeking a contested hearing on the sibling-relationship exception to make "'an offer of proof to clearly identify the contested issue(s)' prior to determining whether a hearing is warranted." (*In re Earl L.* (2004) 121 Cal.App.4th 1050, 1053.)

As with the parental-benefit exception, Pricilla's and Johnny's offers of proof on the sibling-relationship exception lacked substance and specificity. Counsel for Pricilla described the proposed testimony in the most general terms: witnesses "could offer testimony with respect to . . . the sibling bond between Beautifull and her siblings." Counsel for Johnny did not argue that a sibling bond existed, only that Johnny wanted Beautifull and Logan to grow up together. And neither counsel stated the ""'content of the answer to be elicited'"" (*In re A.G.*, *supra*, 58 Cal.App.5th at pp. 996, 1007) from proposed witnesses on any of the issues the court needed to consider to determine whether the sibling-relationship exception applied. (See *In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 952 ["To determine the significance of the sibling relationship, the court considers the factors set forth in section 366.26, subdivision [(c)(1)(B)(v)]."].) The court did not abuse its discretion in denying Pricilla and Johnny a contested hearing on the sibling-relationship exception.

C.    *Pricilla and Johnny's Unclean Hands Defense Is Forfeited and Meritless*

Pricilla and Johnny also argue the doctrine of unclean hands barred the Department "from arguing a lack of bond." Pricilla and Johnny assert that in their offers of proof they said they "were often unable to get visits with [Beautifull] due to the Department's failure to comply with the minimum number of

visits ordered by the juvenile court" and that the Department did not attempt "to set up a single visit between any of the siblings." Pricilla and Johnny's unclean hands argument is both forfeited and meritless.

"Generally, the equitable doctrine of unclean hands applies when a plaintiff has acted unconscionably, in bad faith, or inequitably in the matter in which the plaintiff seeks relief. [Citations.] "'The misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants.'" [Citation.] If the required showing is made, unclean hands may be a complete defense to legal as well as equitable causes of action." (*Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 432; accord, *Teacher v. California Western School of Law* (2022) 77 Cal.App.5th 111, 139.) By not raising this argument in the juvenile court, Pricilla and Johnny forfeited it. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court," and "the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue"]; *In re C.M.* (2017) 15 Cal.App.5th 376, 385 ["A party may not assert theories on appeal which were not raised in the trial court."]; see also *In re A.K.* (2017) 12 Cal.App.5th 492, 500 [father forfeited his contention the child protective agency and the juvenile court failed to assess the

paternal grandmother's request for placement because he failed to raise the issue in the juvenile court].)[7]

Even if they had not forfeited the argument, Pricilla and Johnny have not demonstrated the unclean hands doctrine applies. The Department was not seeking legal or equitable relief; Pricilla and Johnny were seeking to prove a statutory exception to the termination of their parental rights applied. (Cf. *People v. Palacios* (2021) 67 Cal.App.5th 184, 195 [unclean hands doctrine, which "applies to bar *plaintiffs* from seeking relief," did not apply where the People "were not seeking relief under the proffer agreement," but instead, the "*defendant . . .* was seeking to specifically enforce the proffer agreement"].) In any event, even if the doctrine applied in this context, the record does not support a finding the Department prevented Pricilla or Johnny from visiting Beautifull. To the contrary, the record shows Pricilla and Johnny often failed to request visits, refused to disclose their whereabouts or to meet with the investigator, and stopped visiting altogether for a five-month period after disposition and then for another three-month period before the

---

[7] Pricilla and Johnny assert counsel for Pricilla "raised this defense when she argued that it would be a miscarriage of justice for the Department to argue that the parents were unable to demonstrate the parent-child bond due to both COVID-19 protocols that prevented in-person visitation and third parties preventing [Pricilla] from visiting with her child." The record does not reflect counsel for Pricilla stated that the Department had unclean hands or that the Department's wrongdoing precluded it from arguing the parental-benefit exception did not apply. The record also does not reflect counsel for Pricilla stated the Department's failure to set up sibling visitation precluded it from arguing the sibling-relationship exception did not apply.

18

selection and implementation hearing. Pricilla sometimes cancelled or did not show up to scheduled visits.

Finally, any error the juvenile court may have committed in allowing the Department to argue Pricilla and Johnny did not have a bond with Beautifull was harmless. (See Cal. Const., art. VI, § 13; *In re Celine R.*, *supra*, 31 Cal.4th at pp. 59-60 [reversal permitted "only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error"]; *In re T.S.* (2020) 52 Cal.App.5th 503, 517-518.) Pricilla and Johnny did not offer or say they could offer evidence that they had visited consistently or that Beautifull formed a significant attachment to them. (See *In re Caden C.*, *supra*, 11 Cal.5th at p. 632.)

## DISPOSITION

The juvenile court's orders terminating Pricilla's and Johnny's parental rights to Beautifull are affirmed.

SEGAL, J.

We concur:


PERLUSS, P. J.



FEUER, J.


19