Filed 5/12/14  In re H.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re H.M. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.M., <br><br> Defendant and Appellant. | D064915 <br><br> (Super. Ct. No. J518670A-C) |

APPEAL from an order of the Superior Court of San Diego County, Cynthia Bashant, Judge.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Carolyn Griesemer, under appointment by the Court of Appeal, for minors.

T.M. (mother) appeals from the order pursuant to Welfare and Institutions Code[1] section 366.26 terminating her parental rights over her daughter C.M. Mother contends that the juvenile court erred by failing to apply the sibling-relationship exception to termination under section 366.26, subdivision (c)(1)(B)(v). We disagree and thus affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In mid-April 2013, the San Diego County Health and Human Services Agency (Agency) filed a petition on behalf of three-month-old C.M. alleging she was a child described by section 300, subdivision (a) because she had suffered serious physical harm inflicted nonaccidentally. The petition alleged that a few days earlier, C.M. was discovered to have a detrimental and traumatic condition consisting of bilateral subdural hematomas, which medical experts indicated was highly concerning for physical abuse. Petitions were also filed on behalf of C.M.'s siblings, two-year-old H.M. and one-year-old A.R.

At the detention hearing, the court found by clear and convincing evidence that showings had been made under section 300, subdivision (a) for C.M. and under subdivision (j) for her two siblings. The children were detained out of their parents' home: H.M. and A.R. remained in their placement with their maternal aunt and uncle and C.M. remained in a licensed foster home.

---

[1] All statutory references are to the Welfare and Institutions Code.

In late April 2013, C.M. had a seizure caused by the subdural hemorrhages and was taken to the emergency room. It was discovered C.M. had additional brain bleeding and swelling, and as a result a shunt was inserted into her head.

In early-May 2013, the Agency filed amended petitions. The amended petitions for H.M. and A.R. added a second count under section 300, subdivision (j) and alleged they were at substantial risk of being abused because C.M. had suffered severe physical abuse inflicted by a parent that required medical treatment. The amended petition for C.M. added a count under subdivision (e) of section 300, and alleged that father who had a criminal history of domestic violence, as confirmed by mother, had physically abused C.M. causing injuries that could lead to cerebral palsy and developmental delays.

At the May 2013 detention hearing, the court found by clear and convincing evidence that H.M., A.R. and C.M. were children described by section 300, subdivisions (a) and (e) as alleged in the amended petition. The agency in its jurisdiction/disposition report recommended that all three children remain in their then-current placements and that reunification services not be provided to mother. That report also noted that mother admitted that father shook C.M. "as hard as he could because he was mad" and tossed her in the air, hitting her head on the ceiling; that mother, with an open hand, hit father to get him to stop shaking C.M., and that father laughed in response; and that father also had shaken C.M. on several other occasions in the past because C.M. would not stop crying.

At the June 2013 contested jurisdiction and disposition hearing, the court found true by clear and convincing evidence the allegations under section 300, subdivision (j), for both H.M. and A.R., and under subdivision (e) for C.M. The court adopted the

3

recommendations of the Agency and also found by clear and convincing evidence that no reunification services were to be provided to mother under section 361.5, subdivision (b)(5) for C.M., and under section 361.5, subdivision (b)(6) and (7) for her siblings. The court set a section 336.26 hearing to implement a permanent plan for the children.

In early October 2013, mother filed a section 388 petition requesting reunification services for all children and asking the court to vacate the section 366.26 hearing. Mother alleged her circumstances had changed because she was in individual therapy, was participating in parenting and domestic violence classes and was visiting with the children. The court found mother made a prima facie showing on her section 388 petition and set for trial the section 366.26 hearing in late October—for C.M. only.

At the hearing in late October 2013, the court heard the testimony of mother, her therapist and her brother. The court denied mother's section 388 petition and found she had not shown by a preponderance of the evidence changed circumstances because mother was still in the "very beginning stages" of therapy. The court also found it was not in the children's best interests to grant mother reunification services. Specifically as to C.M., the court found mother was not "in a position to deal with C.M.'s medical issues." As to H.M. and A.R., the court found they both "were under the age of two at the time of removal" and thus "[t]hey haven't spent much of their lives being parented by the mother."

Finally, as germane to this proceeding the court found by clear and convincing evidence that C.M. was adoptable, that none of the exceptions under subdivision (c)(1)(B) of section 366.26 applied to preclude adoption, and that terminating parental rights was in C.M.'s best interest, ruling in part as follows:

"First of all, I think the first thing I need to find is whether [C.M.] is adoptable or not. And it's pretty clear she's adoptable. She's in a home that's willing to adopt her. But even if this home was not available to adopt, and even though she's medically fragile, the social worker indicates that there's at least 21 families in San Diego County alone that would be willing to adopt the child, despite her . . . medical issues. And I think that's in part, because she's so young and . . . has many other attributes that make her adoptable. So I think it's pretty clear she's adoptable.

"So the question, then, becomes, and the law says, then, I shall terminate parental rights unless there's an exception that applies. And with respect to either the parent/child bond or the sibling exception, I don't find that either one of them apply in this particular case.

"Again, [C.M.'s] very young. She only lived with mother a brief period of time before she was removed. She only lived with [A.R.] for a brief period of time before she was removed. And I don't know that she ever lived with [H.M.], at least not for any substantial period of time. She's had no shared experiences with the siblings, other than a weekly short visit. And her need for stability at this young age, and, particularly given her medical needs, far outweighs whatever . . . ties she has to her mother or her siblings.

5

"So I do find that the social worker's recommendations are appropriate with respect to [C.M.], and I will adopt those recommendations. I do find by clear and convincing evidence that [C.M.] is adoptable and would likely be adopted if parental rights are terminated.

"By clear and convincing evidence, I do find that none of the circumstances listed in section 366.26(C)(1)(B) exist in this case. And by clear and convincing evidence, I do find adoption is in [C.M.'s] best interest. Therefore, I will terminate all parental rights and declare [C.M.] free from the custody and control of both mother and father."

DISCUSSION

As noted, mother only appeals the finding of the court that the sibling-relationship exception to termination of parental rights does not apply here. "At a hearing under section 366.26, the court must select and implement a permanent plan for a dependent child. Where there is no probability of reunification with a parent, adoption is the preferred permanent plan. [Citation.] To implement adoption as the permanent plan, the juvenile court must find, by clear and convincing evidence, that the minor is likely to be adopted if parental rights are terminated. (§ 366.26, subd. (c)(1).) Then, in the absence of evidence that termination of parental rights would be detrimental to the child under statutorily specified exceptions (§ 366.26, subd. (c)(1)(A)-(B)), the juvenile court 'shall terminate parental rights' (§ 366.26, subd. (c)(1))." (*In re K.P.* (2012) 203 Cal.App.4th 614, 620.)

6

"The sibling[-]relationship exception [to termination of parental rights] applies where the juvenile court finds that 'substantial interference with a child's sibling relationship' is a 'compelling reason' to conclude that adoption would be detrimental to the child. In making this determination, the court should take into consideration 'the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption.' (§ 366.26, subd. (c)(1)(B)(v).)" (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1317.)

Our high court in *In re Celine R.* (2003) 31 Cal.4th 45, 61, explained the sibling-relationship exception application as follows: "Reflecting the Legislature's preference for adoption when possible, the 'sibling relationship exception contains strong language creating a heavy burden for the party opposing adoption. It only applies when the juvenile court determines that there is a "compelling reason" for concluding that the termination of parental rights would be "detrimental" to the child due to "substantial interference" with a sibling relationship.' [Citations.] Indeed, even if adoption would interfere with a strong sibling relationship, the court must nevertheless weigh the benefit to the child of continuing the sibling relationship against the benefit the child would receive by gaining a permanent home through adoption." (See also *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014 [noting the "application of this exception will be rare,

7

particularly when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount"].)

The sibling-relationship exception contains both factual and discretionary components. First, the proponent of the sibling-relationship exception, such as mother here, bears the burden to produce evidence of the existence of a beneficial sibling relationship, a factual question, which is reviewed for substantial evidence. (*In re Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.) Second, the court must "find that the existence of that relationship constitutes a '*compelling reason* for determining that termination would be detrimental.' " (*Id.*, at p. 1315.) We review that determination for abuse of discretion, inasmuch as it is "a 'quintessentially' discretionary decision, which calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption." (*Ibid.*)

Mother admits that the facts of the instant case are horrific, as father repeatedly and violently shook C.M. "resulting in emergency brain surgery, the insertion of a brain shunt and cerebral palsy—a life-long condition." Mother also admits that she did not protect C.M. from father out of fear of him and the members of his family and that C.M. "was luckily placed in a loving home capable of meeting her special needs. . . ." Nonetheless, mother contends that C.M. deserves more—a legal relationship with her two sisters who "share the same history" of her past and who are "bonded to her by blood."

In essence, mother's contention is a request that we review the evidence anew, reweigh the credibility of witnesses, ignore the findings of the court and enter a new finding that the sibling-relationship exception in section 366.26, subdivision (c)(1)(B)(v) of section 366.26 applies. This we cannot do. (See *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947 [observing that in a challenge to the sufficiency of the evidence to support a court's finding the sibling-relationship exception is inapplicable, a court of review must uphold that finding if there is substantial evidence to support it and in so doing the reviewing court cannot evaluate the credibility of witnesses, reweigh the evidence or resolve evidentiary conflicts].)

Here, we conclude mother has not satisfied her "heavy burden" (*In re Celine R.*, *supra*, 31 Cal.4th at p. 61) to show that termination of parental rights would be detrimental to C.M. due to "substantial interference" (§ 366.26, subd. (c)(1)(B)(v)) with C.M.'s sibling relationships. Indeed, the record shows that C.M. lived with her sister H.M. for only about the first two weeks of her life, when they all resided in the maternal uncle's home; that C.M. lived with A.R. for only about three and a half months before C.M. was removed and separated from her sibling; that after separation, there were only 12 total visits in which all the siblings were present; that each of those visits lasted about one hour and 15 minutes; that at the time of the contested section 366.26 hearing, C.M. was just under 10 months old; and that social worker Julie Walker opined the siblings did not have shared experiences and noted in her October 2, 2013 section 366.26 report that neither H.M. nor A.R. cried or appeared upset when leaving visits that included mother *and* their sister C.M. We therefore conclude there is substantial evidence in the record to

9

support the finding of the trial court that the sibling-relationship exception did not apply in this case. (Cf. *In re Naomi P.* (2005) 132 Cal.App.4th 808, 812-820 [noting the sibling-relationship existed when there was substantial evidence to support the finding that there were extensive and consistent visits between siblings for over a period of three years, when the visits would last usually for three hours and included overnight visits on weekends and when the youngest child was able to call her brother by name and identify her other siblings].)

What's more, even *if* we concluded adoption would interfere with an alleged strong sibling relationship, we nonetheless would conclude the court did not abuse its discretion when it weighed the benefit to C.M. of continuing that relationship against the benefit she would receive by gaining a permanent home through adoption. (See *In Re Celine R.*, *supra*, 31 Cal.4th at p. 61; see also *In re L.Y.L.*, *supra*, 101 Cal.App.4th at pp. 952-953.)

Indeed, here the record shows that C.M. has caregivers who are very committed to her and are willing to adopt her; that they already have an approved home study with the Agency because they have adopted once before; that unlike mother who failed to show up to all but one of C.M.'s medical appointments (and with respect to the one, showed up late), C.M.'s caregivers are attuned to what mother notes are C.M.'s "special needs," are bonded to C.M. and are fully committed to providing for her both physically and mentally; and that there were 21 other possible families in San Diego County with an approved home study that were potential matches to adopt C.M. In light of such evidence, we conclude the court properly exercised its discretion in finding the benefit

10

C.M. would received by gaining a permanent home through adoption outweighed the alleged benefit to her of continuing the sibling relationship(s).[2]

DISPOSITION

The order is affirmed.

BENKE, Acting P. J.

WE CONCUR:

McDONALD, J.

O'ROURKE, J.

---

[2]    We note that minors' counsel submitted a letter brief in this appeal and joined in the arguments and the position of the Agency as presented by the Office of County Counsel, County of San Diego.