Filed 11/25/14  In re J.C. CA4/1

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | D065662 |
| SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. J511883D) |
| Plaintiff and Respondent, | |
| v. | |
| D.C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Order affirmed.

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, and John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

D.C. appeals a juvenile court order terminating parental rights to her son, J.C. She contends (1) the evidence was insufficient to show J.C. was likely to be adopted within a reasonable time, (2) the juvenile court should have continued the proceedings and found J.C. was difficult to place for adoption, and (3) the court should have applied the sibling relationship exception to adoption. We reject her contentions and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In 2008, D.C. gave birth to J.C. The following year, she gave birth to J.C.'s half-sister. J.C. and his half-sister (together, the Children) have different fathers. D.C. has four older children, none of whom are in her care, and was pregnant with another child at the time of the trial from which this appeal was taken. D.C. has a long history of abusing alcohol, marijuana and methamphetamine. She has also suffered psychological problems since childhood, including anxiety, depression and chronic paranoid schizophrenia.

In April 2012, the San Diego County Health and Human Services Agency (the Agency) filed dependency petitions on behalf of the Children. The Agency initially detained the Children at the Polinsky Children's Center. They were later detained in a licensed foster home and the Agency planned to treat the Children as a sibling group.

In June 2012, the court made a true finding on J.C.'s petition, removed custody from the parents, placed J.C. in foster care and granted D.C. reunification services and supervised visitation. At the 12-month permanency hearing in September 2013, the court found the return of J.C. to parental custody would be detrimental, and the services provided had been reasonable. It terminated court-mandated reunification services,

2

continued J.C. in out-of-home care, and scheduled a hearing under Welfare and Institutions Code section 366.26. (Undesignated statutory references are to this code.) In December 2013, the Agency requested that J.C. be placed in the home of his paternal grandmother after the foster mother gave notice requesting that the Children be removed from her home. The court appointed special advocate (CASA) reported that the foster mother's "change of heart" toward the Children was sudden and shocking. After a background investigation and assessment of the paternal grandmother, the Agency placed the Children with her.

In an assessment report dated January 2014, a social worker recommended adoption for J.C. and the termination of parental rights. The paternal grandmother had not reported any behavioral issues for J.C. and the social worker noted that he presented as a happy and well-adjusted child during her interactions with him. J.C. had been assessed as generally adoptable due to his attractiveness, overall good health, and absence of significant developmental delays. There were 19 possible adoptive homes in San Diego County willing to adopt a child matching J.C.'s characteristics. The CASA reported that several families also expressed a desire to adopt the Children. The paternal grandmother continued to express her commitment to J.C. and wished to provide him with a permanent home through adoption. J.C.'s paternal grandmother was also willing to adopt J.C.'s half-sister should she fail to reunify with her father.

In a report dated January 2014, the CASA recommended a permanent plan of adoption for J.C. The CASA noted that J.C. was an exceptionally bright, sociable, and cheerful young boy. The CASA reported that J.C.'s paternal grandmother was cheerful

3

and affectionate with the Children. The Children were clean, dressed appropriately, and appeared relaxed and happy in the relative caregiver's home. The grandmother told the CASA that the Children have a close relationship and she understood the importance that they remain together.

At the contested section 366.26 trial in February 2014, the court received the Agency's reports into evidence, the parties had no questions for the social worker, and there was no other affirmative evidence presented. After hearing closing arguments, the court found that J.C. was likely to be adopted and there were no circumstances under section 366.26, subdivision (c)(1)(B) which applied to render termination of parental rights detrimental to the child. The court terminated all parental rights and referred the child to the Agency for adoptive placement. D.C. timely appealed.

## DISCUSSION

### I. *Likelihood of Adoption*

D.C. asserts the Agency failed to meet its burden of proving J.C. was likely to be adopted within a reasonable time. We disagree.

Adoptability focuses on whether the child's age, physical condition and emotional state make it difficult to find a person willing to adopt the minor. (*In re Zeth S.* (2003) 31 Cal.4th 396, 406.) An adoptability finding requires "clear and convincing evidence of the likelihood that adoption will be realized within a reasonable time." (*Ibid.*; see § 366.26, subd. (c)(1).) If the court finds that the child is likely to be adopted within a reasonable time, the juvenile court is required to terminate parental rights unless the parent shows by a preponderance of the evidence that termination of parental rights would be detrimental

4

to the child under one of the exceptions listed in section 366.26, subdivision (c)(1)(A) and (B). (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343-1345.) We review an adoptability finding for substantial evidence (*In re Jose C.* (2010) 188 Cal.App.4th 147, 158), considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order (*In re J. I.* (2003) 108 Cal.App.4th 903, 911).

Here, the social worker concluded that J.C. was adoptable, citing his attractiveness, good health and absence of significant developmental delays. An adoptions coordinator identified 19 approved adoptive homes in San Diego County willing to adopt a child matching J.C.'s characteristics. D.C. focuses on J.C.'s early behavioral problems to support her argument that J.C. was not likely to be adopted. This argument is misplaced as J.C.'s prior caregiver reported that his behavior and coping skills had improved since his participation in therapy. Significantly, J.C.'s relative caregiver reported no behavioral issues for J.C. Additionally, J.C. was doing well in school with no reported behavioral issues.

D.C. also claims the decision of the foster family to not adopt the Children will play a "huge factor" in the likelihood of J.C.'s adoption, suggesting the Children may have characteristics which, when revealed, would dissuade potential parents, including the paternal grandmother, from adoption. Unsupported speculations about undisclosed issues or possible future problems are insufficient to refute the evidence J.C. was a likely candidate for adoption. (See *In re R.C.* (2008) 169 Cal.App.4th 486, 492.) In any event, the CASA's report suggests the foster family changed its mind about adoption because

5

J.C.'s half-sister's behavior (not J.C.'s) was getting worse and the foster mother " 'couldn't take it anymore.' "

Next, D.C. claims the placement with the paternal grandmother is unstable and this will impact J.C.'s adoptability.  Even assuming, however, that the Children's placement with J.C.'s paternal grandmother will fail, the CASA reported that several families expressed a desire to adopt the Children.  Finally, D.C. cites the close sibling relationship between the Children as an impediment to adoption.  We disagree as J.C.'s paternal grandmother and several families expressed a willingness to adopt both J.C. and his half-sister.  Thus, the evidence shows the relationship between the Children would not pose an obstacle to adoption.

In summary, substantial evidence supported the juvenile court's adoptability finding and we may not reweigh the evidence of J.C.'s adoptability, as D.C.'s contentions would require.  (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

## II.  *Application of section 366.26, subdivision (c)(3)*

A child may be found to be difficult to place for adoption "if there is no identified or available prospective adoptive parent for the child because of the child's membership in a sibling group, or the presence of a diagnosed medical, physical, or mental handicap, or the child is seven years of age or more."  (§ 366.26, subd. (c)(3).)  If the court finds a child is difficult to place for adoption and there is no identified or available prospective adoptive parent, "the court may identify adoption as the permanent placement goal and without terminating parental rights, order that efforts be made to locate an appropriate

6

adoptive family for the child, within the state or out of the state, within a period not to exceed 180 days." (*Ibid.*)

D.C. asserts the juvenile court erred in failing to find J.C. was difficult to place for adoption based on his membership in a sibling group and the presence of characteristics which would dissuade potential parents from adopting him. The Agency asserts, and we agree, D.C. forfeited this argument by failing to raise it below. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222.) In any event, even if D.C. had requested a continuance under section 366.26, subdivision (c)(3), the court would have denied it because an available prospective adoptive parent existed, J.C.'s paternal grandmother.

### III. *Application of the Sibling Relationship Exception*

D.C. contends the juvenile court erred in finding that the sibling relationship exception under section 366.26, subdivision (c)(1)(B)(v), did not apply to render termination of parental rights detrimental to J.C. The Agency asserts D.C. forfeited this argument by failing to raise it below. The forfeiture doctrine may be applied in the context of the sibling relationship exception and our review of the record shows D.C. did not argue this exception applied. (*In re Erik P.* (2002) 104 Cal.App.4th 395, 402 [noting it is the parent's burden to assert this exception and a parent's failure to do so precludes its assertion on appeal].) In any event, even if D.C. had argued for application of the sibling relationship exception, we conclude she has not met her burden to establish the merits of her challenge.

Adoption is the permanent plan favored by the Legislature. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.) If the court finds by clear and convincing evidence that

7

a child is adoptable, it becomes the parent's burden to show that termination of parental rights would be detrimental to the child because of a specified statutory exception to termination of parental rights and adoption. (*Id*. at p. 574.) The sibling relationship exception to terminating parental rights applies when the juvenile court finds termination of parental rights would substantially interfere with the child's sibling relationship and the severance of the relationship would be so detrimental to the child as to outweigh the benefits of adoption. (§ 366.26, subd. (c)(1)(B)(v); *In re L. Y. L.* (2002) 101 Cal.App.4th 942, 951-952.) The purpose of this exception is to preserve long-standing sibling relationships that serve as "anchors for dependent children whose lives are in turmoil." (*In re Erik P.*, *supra*, 104 Cal.App.4th at p. 404.) "[T]he application of this exception will be rare, particularly when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount." (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014.) We review a juvenile court order declining to apply an exception to termination of parental rights and adoption for substantial evidence. (*In re L. Y. L.*, *supra*, 101 Cal.App.4th at p. 947.)

First, it was D.C.'s burden to establish this exception, not the Agency's. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 809.) While it is undisputed that the Children have a close and loving relationship, D.C. cited no evidence in the record showing severance of J.C.'s relationship with his half-sister would be so detrimental to him as to outweigh the benefits of adoption. (§ 366.26, subd. (c)(1)(B)(v).) While the juvenile court's failure to apply this exception can be affirmed on this ground alone, we must acknowledge the reality of the Children's situation. J.C. and his half-sister have different

8

fathers. Based on the limited amount of information in the record regarding J.C.'s half-sister, it appears she is attempting to reunify with her father. Thus, a possibility exists the Children could be placed with different families. Should J.C.'s half-sister not reunify with her father, the Agency has already acknowledged the Children are a sibling group and will presumably attempt to keep the Children together. Importantly, J.C.'s grandmother has expressed a desire to adopt the Children.

## DISPOSITION

The order is affirmed.

McINTYRE, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.