Filed 8/7/15  In re A.G. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.G., et al., Persons Coming Under the Juvenile Court Law. | B261470 (Los Angeles County Super. Ct. No. CK56581) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARIA G., et al.,<br><br>Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County. Annabelle G. Cortez, Judge.  Dismissed and affirmed.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, Office of the County Counsel, Dawyn R. Harrison, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Appellant Minors.

In this dependency action, the juvenile court terminated the parental rights of Maria G. ("mother") to her three youngest children, A.G. (age 9), H.G. (age 6), and E.G. (age 4) (the "children"). The children's older siblings, A.V. (age 16), N.M. (age 13), J.M. (age 12), and A.M. (age 10) (the "siblings"), had argued against termination of mother's rights based on the sibling relationship exception contained in Welfare and Institutions Code[1] section 366.26, subdivision (c)(1)(B)(v), as had mother herself. Mother and the siblings separately appeal the juvenile court's order.

We determine that, pursuant to *In re J.T.* (2011) 195 Cal.App.4th 707, the siblings have no standing to appeal the order terminating parental rights. We further conclude that the juvenile court properly found that mother failed to establish the applicability of the sibling exception to adoption. We therefore affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

The Los Angeles Department of Children and Family Services (the Department) filed an original petition on November 22, 2011, as to all eight of mother's children, that is, the minor parties to this appeal and then 15-year old D.V. The sole allegation in the petition was that mother had a history of substance abuse and used amphetamine and methamphetamine. The children were detained and originally placed in six separate foster homes.

The Department filed a first amended petition on January 3, 2012, which alleged, pursuant to section 300, subdivision (a), that mother and the father of the three youngest children ("father") had a history of engaging in violent altercations in the children's presence. On prior occasions in 2010, father pulled mother by the hair. He also pushed mother in the presence of the children. Mother failed to protect the children and allowed father to reside in the home. The petition also alleged that mother physically abused A.M. by striking her head with a hair brush. This latter allegation was pled pursuant to both subdivisions (a) and (j) of section 300. The amended petition alleged, pursuant to

---

[1] Further statutory references are to the Welfare and Institutions Code.

2

section 300, subdivision (b), that mother had a history of substance abuse and used methamphetamine, and father had an unresolved history of alcohol abuse. On multiple occasions in 2010, he became intoxicated in the presence of the children.

The jurisdictional hearing was held on March 2, 2012. The court sustained the petition and continued the dispositional hearing.

The dispositional hearing was held on March 28, 2012. The court removed the children from their parents' care and ordered the Department to provide mother with family reunification services, including participation in a drug treatment program, random drug testing, parenting, and individual counseling. D.V. was also ordered to participate in a drug treatment program. The court ordered the Department to initiate an Interstate Compact investigation of the maternal grandmother in Las Vegas, Nevada.

Mother was provided with over 12 months of reunification services. On June 7, 2013, the court held the twelve-month review hearing, at which time it terminated services and set a section 366.26 hearing. The October 3, 2013 section 366.26 hearing was continued in order to locate adoptive homes for the children and the siblings; the court ordered a plan of planned permanent living arrangement for then 17-year-old D.V. and 11-year-old J.M.

On December 5, 2014, counsel for A.V., N.M., J.M., and A.M. filed a section 388 petition requesting standing at the section 366.26 hearing scheduled for the children to raise the sibling exception to adoption. The court granted that petition on December 11, 2014.

On January 12, 2015, the court terminated jurisdiction as to D.V., who was then 18 years of age. The court then proceeded with the section 366.26 hearing as to the three youngest children.

All counsel accepted the following stipulated testimony offered by the older siblings' counsel: (1) All the minors who attended sibling visits enjoyed them; (2) J.M. rarely attended and A.G. missed some visits; (3) the visits occurred at least every other Saturday; (4) A.G.'s foster parents wished to adopt him, but did not plan to allow further

3

sibling visits, due to safety and behavior concerns; and (5) the children resided together in mother's home until July 27, 2011.

A.M., A.V., and A.G. testified at the hearing about the sibling relationship and what they did at visits. A.M. testified that she would be "heartbroken" if she were not able to visit A.G. any longer. She said that she did not want H.G., E.G. and A.G. to be adopted because "I don't want them to break our relationship." A.V. described his relationship with his three youngest siblings as good. A.G. followed him around and liked to be next to him. H.G. and E.G. were happy to see him at visits. They ran and hugged him when they saw him.

A.G. thought he and A.V. had a really good relationship. He also thought his relationship with A.M. was good. He said he would feel "bad" if he could not see his siblings anymore. He wanted to see his siblings more and thought it was important to see his siblings.

The Department argued the sibling exception to adoption did not apply, and asked the court to terminate parental rights. The older siblings' attorney, Ms. Cortez, argued that the sibling exception to adoption applied. A.G., H.G. and E.G.'s attorney asked the court to terminate parental rights. She noted, however, that the siblings "do love each other and that there is a bond." Mother's counsel argued that the child-benefit exception applied, and joined in Ms. Cortez's argument that the sibling exception to adoption applied. The matter was continued to January 13, 2015.

On January 13, 2015, the section 366.26 hearing continued. The court first ordered that J.M.'s permanent plan was for a planned permanent living arrangement. He did not want to be adopted or have a legal guardian. He did not want to talk to mother and did not want to visit his siblings. With respect to A.G., H.G. and E.G., the court found that they were all adoptable. The court further found that mother did not meet her burden of proof that the parental relationship exception to adoption applied. With regard to the sibling exception, the court acknowledged, "the kids do have a bond." However, in finding that the sibling exception did not apply, the court stated, "the need for

4

permanency and the best interests of the children for permanency is far outweighed by the existing sibling bond, although I recognize that they do have a bond."

The court terminated parental rights. Mother and the siblings separately appealed the order.

## DISMISSAL OF SIBLINGS' APPEAL

As a preliminary matter, the Department maintains that the siblings have no standing to appeal the juvenile court's order terminating parental rights, and therefore argue that their appeal should be dismissed. We agree.

To have standing to appeal a person must be a party and be aggrieved by the order appealed. This rule is premised upon Code of Civil Procedure section 902, which states, "Any party aggrieved may appeal. . . . " (§ 902.) "An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re K.C.* (2011) 52 Cal.4th 231, 236.)

Neither error nor prejudice is presumed on appeal, and it is the appellant's burden to affirmatively demonstrate both. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) "'A "lack of standing" is a jurisdictional defect.'" (*In re D.M* (2012) 205 Cal.App.4th 283, 294, quoting *Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1592.)

Section 388, subdivision (b)(1), provides that a dependent child "may petition the court to assert a relationship as a sibling related by blood, adoption, or affinity through a common legal or biological parent to a child who is . . . a dependent of the juvenile court, and may request . . . consideration when determining or implementing a . . . permanent plan for the dependent child or make any other request for an order which may be shown to be in the best interest of the dependent child."

A sibling's petition filed pursuant to section 388, subdivision (b)(l), if granted, allows the sibling to appear at the dependent child's section 366.26 hearing and take a position as to whether the dependent child is adoptable or whether the sibling relationship

exception is applicable. However, the focus of the sibling's petition as well as the focus of the section 366.26 hearing, including the applicability of the sibling relationship exception, is on the interests of the dependent child, not the interests of the siblings. (§§ 366.26, 388, subd. (b)(1); *In re J.T, supra,* 195 Cal.App.4th at p. 717.) "Standing to challenge an adverse ruling is not established merely because a party takes a position on an issue that affects the minor." (*In re J.T., supra,* at p. 717.) Furthermore, an appellant has no standing to assert the rights of another party. (*Ibid.*)

In *In re J.T, supra,* 195 Cal.App.4th 707, J.T.'s sister (sister) filed a section 388, subdivision (b) petition, seeking standing at the permanency planning hearing to present evidence on the sibling relationship between herself and the minor and to assert the sibling bond exception to adoption. The juvenile court granted the motion. (*Id.* at p. 715.) At the hearing, the juvenile court acknowledged the existence of a close sibling bond between J.T (born 1999) and sister (born 1993) based upon their lives together and shared common experiences. However, the court found the relationship was not sufficiently significant such that termination of parental rights would cause detriment to J.T. The court also noted that J.T. wanted to remain and be raised by his prospective adoptive parents. The court found that the sibling-relationship exception was not applicable and terminated parental rights. (*Id.* at p. 716.) The mother and sister appealed.

The Court of Appeal stated, "'At stake in a dependency proceeding is both the [dependent] child's welfare and the parent-child relationship.' [Citation.] The legally cognizable interest in the maintenance of the sibling relationship relates to the *minor's* welfare and the relationship between him and mother. It is the *minor's* interest, not his sister's interest, that is at issue. [Citation.]" (*In re J.T., supra,* 195 Cal.App.4th at p. 717.) Although the sibling relationship is not irrelevant, the issue is whether adoption would be detrimental to the adoptive child, not the sibling. (*Id.* at p. 718.) Accordingly, the detriment caused to a sibling by the termination of parental rights does not give the sibling standing to appeal the termination of parental rights.

Sister argued that because section 388, subdivision (b) allowed her to participate in the permanency planning hearing, she should have standing to appeal. (*In re J.T., supra,* 195 Cal.App.4th at p. 718.) The Court of Appeal disagreed, stating, "In raising the sibling relationship exception before the juvenile court, sister was not asserting her own interest or right. Rather, she was asserting the minor's interest on his behalf. In this way, conferring the ability to participate in the permanency planning hearing on sister is similar to conferring de facto parent status on a caregiver. The acquisition of de facto parent status does not confer standing to appeal from *any* juvenile court order; rather, it confers standing to challenge only orders pertaining to those things to which the de facto parent is entitled. [Citation.] Sister is not entitled to challenge the termination of parental rights nor does she have a right to block the minor's adoption. Thus, although sister was permitted to assert the sibling relationship exception to adoption and present evidence on the issue, she has no standing to challenge the termination order because *her* legal rights are not impacted by that order. ([*In re*] *Frank L.* (2000) 81 Cal.App.4th 700, 703.)" (*Ibid.*)

The siblings seek to distinguish *In re J.T., supra,* 195 Cal.App.4th 707 based on the fact that J.T.'s sister, although a minor during the pendency of the juvenile court proceeding, was 18 at the time of the appeal. The sister had argued that she had "a substantial interest which was injuriously affected by the court's decision 'because it directly impacts the sibling relationship [she] shared with her brother.'" (*Id.* at p. 719.) The court rejected the contention, stating: "Here, however, sister was an adult sibling no longer bound by her relationship with mother. She was fully capable of having a relationship with her brother regardless of whether mother's parental rights remained intact. '[T]erminating parental rights, here, can in no way interfere with the sibling relationship; just as retaining parental rights would in no way preserve the sibling bond. . . . Where the parents' continuing relationship with the dependent child, or absence thereof, can in no way affect the nature of the sibling relationship because the parent no longer has a relationship with the sibling, the exception does not apply.' (*In re Erik P.* (2002) 104 Cal.App.4th 395, 403.) Here, although sister and mother may well

7

have continued their relationship, they had graduated to an adult relationship, where sister was no longer in a position to be automatically [a]ffected by mother's lack of legal status as parent of both sister and the minor." (*In re J.T., supra,* at p. 719.)

While we recognize the factual distinction between the adult-sibling appellant in *In re J.T.* and the minor-sibling appellants in this case, we fail to see the difference that distinction makes to our analysis of the siblings' standing to appeal the order terminating parental rights. The fact remains that the interests at issue in the hearing below were solely those of the children and the parents. While the court's grant of the section 388 petition entitled the siblings to present evidence at the section 366.26 hearing *on behalf of the children*, it did not invest them with a legally cognizable interest in the outcome of the hearing.

Because the siblings' interests were not at issue at the hearing, and they have no standing to assert the rights of A.G., H.G., or E.G., the siblings' appeal must be dismissed.

STANDARD OF REVIEW

The Sixth District Court of Appeal in *In re Bailey J.* (2010) 189 Cal.App.4th 1308 discussed the split of authority concerning the standard of review applicable to a juvenile court's ruling on whether an exception to termination of parental rights under section 366.26, subdivision (c)(1)(B) applies in a given case. "In *In re Jasmine D.* (2000) 78 Cal.App.4th 1339 (*Jasmine*), the First District Court of Appeal acknowledged that most courts had applied the substantial evidence standard of review to this determination. [Citation.] However, the First District concluded that the abuse of discretion standard of review was 'a better fit' because the juvenile court was obligated to make 'a quintessentially discretionary determination.' [Citations.]" (*In re Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.)

"In our view, both standards of review come into play in evaluating a challenge to a juvenile court's determination as to whether the parental or sibling relationship exception to adoption applies in a particular case. Since the proponent of the exception

8

bears the burden of producing evidence of the existence of a beneficial parental or sibling relationship, which is a factual issue, the substantial evidence standard of review is the appropriate one to apply to this component of the juvenile court's determination. Thus, as this court noted in *In re I.W.* (2009) 180 Cal.App.4th 1517, a challenge to a juvenile court's finding that there is no beneficial relationship amounts to a contention that the 'undisputed facts lead to only one conclusion.' (*In re I.W.*, [*supra,* 180 Cal.App.4th] at p. 1529.) Unless the undisputed facts established the existence of a beneficial parental or sibling relationship, a substantial evidence challenge to this component of the juvenile court's determination cannot succeed." (*In re Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.)

"The same is not true as to the other component of these adoption exceptions. The other component of both the parental relationship exception and the sibling relationship exception is the requirement that the juvenile court find that the existence of that relationship constitutes a '*compelling reason* for determining that termination would be detrimental.' (§ 366.26, subd. (c)(1)(B), italics added.) A juvenile court finding that the relationship is a 'compelling reason' for finding detriment to the child is *based* on the facts but is not primarily a factual issue. It is, instead, a 'quintessentially' discretionary decision, which calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption. [Citation.] Because this component of the juvenile court's decision is discretionary, the abuse of discretion standard of review applies." (*In re Bailey J., supra,* 189 Cal.App.4th at p. 1315.)

Our colleagues in Division Seven of this Court found persuasive *In re Bailey J.*'s approach to reviewing the parental relationship and sibling exceptions to adoption set forth in section 366.26, subdivision (c)(1)(B). (*In re K.P.* (2012) 203 Cal.App.4th 614, 621–622.) We do as well and apply this mixed standard of review here.

9

DISCUSSION

Adoption must be selected as the permanent plan for an adoptable child and parental rights terminated unless the court finds "a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] . . . [¶] (v) There would be substantial interference with a child's sibling relationship. . . . " (§ 366.26, subd. (c)(1)(B).) Under these provisions, "the court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a compelling reason for finding that termination of parental rights would be detrimental to the child. The specified statutory circumstances—actually, *exceptions* to the general rule that the court must choose adoption where possible—'must be considered in view of the legislative preference for adoption when reunification efforts have failed.' [Citation.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 53.) "'Adoption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker.' [Citation.]" (*Ibid.*)

The parent has the burden of establishing that a statutory exception to adoption applies. (Cal. Rules of Court, rule 5.725(d)(4); *In re Bailey J., supra,* 189 Cal.App.4th at p. 1314).) The burden of proof is preponderance of the evidence. (*In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 449.)

Section 366.26 provides for an exception to termination of parental rights if it would result in a "substantial interference with a child's sibling relationship, taking into consideration . . . whether ongoing contact is in the child's best interest . . . " (§ 366.26, (c)(1)(B)(v).) "If the court determines terminating parental rights would substantially interfere with the sibling relationship, the court is then directed to weigh the child's best interest in continuing that sibling relationship against the benefit the child would receive by the permanency of adoption. [Citation.]" (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952.) "When considering the sibling relationship exception, the concern is the best interests of the child being considered for adoption, not the interests of that child's siblings." (*In re Naomi P.* (2005) 132 Cal.App.4th 808, 822.) "[T]he application of [the

sibling relationship exception] will be *rare,* particularly when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount." (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014, italics added.)

In *In re L.Y.L.*, *supra*, 101 Cal.App.4th 942, the Court of Appeal addressed the steps the juvenile court must take to determine if this exception is applicable: "Under [section 366.26, subdivision (c)(l)(B)(v)], the court is directed first to determine whether terminating parental rights would substantially interfere with the sibling relationship by evaluating the nature and extent of the relationship, including whether the child and sibling were raised in the same house, shared significant common experiences or have existing close and strong bonds. [Citation.] If the court determines terminating parental rights would substantially interfere with the sibling relationship, the court is then directed to weigh the child's best interest in continuing that sibling relationship against the benefit the child would receive by the permanency of adoption. [Citation.] [¶] To show a substantial interference with a sibling relationship the parent must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child. Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship." (*Id.* at pp. 951-952.)

Mother argues that the sibling relationship exception was applicable because the children and the siblings lived together until July 27, 2011 and, from the time of their detention, had had consistent visits at least every other week which they all enjoyed. Mother relies primarily on the testimony of A.V., A.M., and A.G. to support her argument.

Initially, we note that E.G. was not yet 11 months old when she was detained, and H.G. was just three. They have thus lived longer in court-ordered placements than they lived as a family with the siblings. The only argument mother makes specifically relating to H.G. and E.G. is that they enjoyed the sibling visits. This does not meet the threshold

11

of a "compelling reason" to conclude that termination of parental rights would be detrimental to these minors.

A.G. was five and a half at the time of detention, and thus had lived with the siblings for a longer period of time than had the two youngest children. There is no doubt that, based upon their time living together, A.G. shared common experiences with the siblings, including the unfortunate instability flowing from mother's inability to provide them with the basic necessities. They no doubt had positive shared memories as well. A.G. characterized his relationship with A.V. as "good" because they played soccer with each other and ran around during visits. He said they really did not talk more than just to say "hi." A.G. characterized his relationships with N.M. and A.M. as "good," but he could not remember anything they talked about. A.G. said he would feel bad if he could not visit his siblings and he wanted to be able to continue visiting and speaking with his siblings by telephone. However, he had never spoken to a sibling over the telephone and he only wanted to visit them on Saturdays. A.G. liked living with his prospective adoptive parents, did not want to leave their home, and wanted a permanent home of his own.

In short, the children knew the siblings as their siblings and enjoyed playing with them; A.G., the only one of the children to testify, would be sad if he could not continue visiting them. The juvenile court acknowledged that the minors shared a bond. However, the sibling exception to adoption does not apply simply upon a finding that a bond exists. Rather, the juvenile court was required to conduct a thorough analysis of the nature and extent of that bond to determine whether the detriment to the children resulting from its severance outweighed the benefit they would enjoy from the love, support and stability an adoptive home would provide. The record fully supports the juvenile court's determination that the benefits the children will receive from adoption far outweigh any possible detriment they may sustain due to the termination of their relationships with the siblings.

## DISPOSITION

The siblings appeal is dismissed.  The order is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIRSCHNER, J.[*]

We concur:


TURNER, P.J.


MOSK, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.