Filed 5/12/25  In re Adeline V. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ADELINE V., a Minor. | |
| RACHELLE V.,<br><br>　　　Petitioner and Respondent,<br><br>v.<br><br>RYAN E.,<br><br>　　　Objector and Appellant. | A171519<br><br>(Mendocino County<br> Super. Ct. No. 23FR00028) |

　　　Ryan E. (mother) appeals from an order terminating her parental rights and freeing her daughter, Adeline V. (minor), from her parental custody and control due to abandonment under Family Code[1] section 7822. Rachelle V. (stepmother) filed the section 7822 petition as a precursor to adopting minor.  Mother argues there is no substantial evidence demonstrating that she intended to abandon minor when she left minor with Kyle V. (father) to address her substance abuse issues.  We affirm.

---

[1] Undesignated statutory references are to the Family Code.

1

# I.  BACKGROUND

Mother[2] and father are the parents of minor, born in August 2016. Mother and father lived together but their relationship ended when minor was one year old after father realized mother had a substance abuse addiction.  Initially, the parents agreed to custody of three days each.  Father subsequently filed a family court case seeking custody after, he reported, he became aware of the severity of mother's addiction.  In December 2018, the court entered their agreed parenting plan which provided physical custody to father and joint legal custody.  As for visitation, the plan provided that "as long as Mother is living at Recovery House in French Camp, California, and the sober living program associated with Recovery House, Father will bring child to visit with Mother at least once per month at times that will be arranged by mutual agreement."  The parents also agreed they would have open telephone access with each other so mother and minor could have phone contact on a regular basis.  Since then, minor has resided with father in Willits.  In 2019, they moved to stepmother's home and have resided there since.

In November 2023, stepmother filed a petition to free minor from mother's custody and control pursuant to section 7822, on the ground that mother left minor in the care and custody of the other parent for a period of one year without any provision for minor's support, or without communication from mother, with the intent to abandon minor.  (§ 7822, subd. (a)(3).)  Stepmother alleged that mother historically engaged in patterns of neglect and abandonment and had a history of drug usage. Stepmother concurrently filed an action to adopt minor.

---

[2] Mother also has a child with a different father, minor's younger half-brother, who is not part of this action.

At the first hearing in December 2023, mother contested the petition. The court appointed her counsel and directed the county's Health and Human Services Agency to investigate the matter. In March 2024, the social services investigator issued a report recommending the court grant stepmother's petition. The investigator interviewed mother, father, stepmother, and minor and summarized their statements as follows.

Stepmother reported she and minor have a mother-daughter relationship and she wanted to ensure minor would be protected if something happened to father. She planned to adopt minor if the petition was granted. Mother had not provided any financial support for minor's care. Stepmother provided minor's health insurance and, along with father, provided financially for the household. Stepmother was concerned about mother's "history of 'neglect and abandonment'" and felt mother's recent interest in minor was due to the petition.

Stepmother provided the investigator with a document titled "Custodial/Visitation/Communication Events" (communication timeline) which information she had documented in real time. Father shared with her communications between himself and mother, and she had been present during calls between mother and minor. The communication timeline documented events, visits, and contact with mother from October 2018 to October 2023. According to the communication timeline, after father was awarded physical custody in December 2018 and through April 2019, mother moved between different sober living houses and had visits with minor. After April 2019, mother no longer lived in sober living housing and contact with mother became sporadic. Mother maintained some of her monthly visits but there were also times when she cancelled her scheduled visits and periods of no contact. In July 2019, father and stepmother found what appeared to be

3

drug paraphernalia in one of minor's books that had been boxed up from mother's house. This trend of sporadic to no contact continued from May 2019 to January 2022. During this period, in February 2021, mother informed father that she had moved to Utah and stated she had been clean for one month. In March 2021, mother texted father explaining why she had not been in contact, including because her phone broke and her living situation was not working. In April 2021, mother and father agreed mother would contact minor by mail and they could progress to phone or in-person visits.

According to the communication timeline, mother had no contact with minor from February 2022 to October 2023. During this period, mother also made no contact with father, except for two instances in August and September 2022 when she texted father but did not inquire about minor. Mother did not resume contact until early November 2023, when she texted father a few days before stepmother filed this petition.

Father reported that minor and he moved into stepmother's home in 2019 and his address and phone number had been the same. Minor sometimes mentioned "her other mother and says she has 'two moms.' " Mother had not provided financial assistance for minor's care. While mother would likely state that she sent gifts or cards for minor, father reported they never arrived, except for a Christmas gift in 2023. Stepmother had raised minor and needed to have legal standing if something happened to him. He never kept minor from mother. Instead, mother kept herself from minor because she was not clean and sober.

Father provided the investigator with text messages with mother between late 2023 and early 2024. He believed mother reached out because he and stepmother were attempting to obtain her address to serve her with

4

the petition. The messages show that on November 3, 2023—four days before stepmother filed her petition—mother texted father asking for his address, stating she wanted to send something for minor. Father replied asking who had sent the message, as it was from an unknown number. When mother replied it was her, father asked for her address, which she provided. On November 7, mother texted and asked to schedule a call with minor. On November 8, father informed mother of the petition and notice of hearing date, and mother replied that she wanted a relationship with minor and wanted to resume contact. Mother said, "I made a mistake by thinking [minor] was better off without me and allowing myself to trust that you would never keep her from me as long as [I] am doing what [I] am supposed [to]." On December 12, mother texted from a new phone number. She requested to speak with minor and stated she was sober and had a stable life.

Later in December 2023, mother and father exchanged texts about Christmas gifts mother had sent minor. On December 25, when mother asked if minor opened her gifts, father informed mother he did not think it was a good idea for her to talk to minor without a proper reintroduction with a trained professional, advising mother she could find a therapist for them "to meet with and figure out the best way to handle this situation." In January 2024, mother texted asking to schedule a call with minor. Father repeated his views about speaking with a therapist first. Mother replied that she had spoken with a therapist who thought the request was unrealistic because they lived in different counties, and she stated father was putting off the inevitable of her having contact with minor. Father replied that mother had put in zero effort and he did not believe a therapist would disagree with a reintroduction, and that location did not matter because it could be a video meeting. In the report, the investigator stated that it appeared "by the tone

5

of the text message there was a breakdown in communication regarding the need for a therapist and how to move forward with video contact."

Father reported that minor's maternal grandmother regularly visited minor. The grandmother traveled to Willits for visits and took minor on outings. Father reported that if the petition was granted, minor's contact with her grandmother would not change.

Mother reported she never intended to abandon minor. She removed herself because, at the time, she believed it was in minor's best interest. She agreed to give father physical custody because she was entering rehabilitation. She "felt 'pushed out' of" minor's life and did not have strength to advocate for herself. She reported that the communication timeline was accurate. The last time she saw minor in person was about four years prior. Around September 2020, she was in a " 'bad' " living situation and relapsed. She had to threaten father with violating the custody agreement to have phone contact with minor. Her last video contact with minor was around January 2022. She acknowledged she often changed phone numbers. She confirmed she moved to Utah in 2021 and confirmed the lack of contact listed from 2022 forward. Mother reported she attempted contact during this time but did not get a reply, however she could not provide written evidence of her attempts at contact. She stated that if father was not going to answer and would push her out of minor's life, "she was going to 'give up on the situation.' " She confirmed she never provided financial assistance for minor. She sent minor Christmas presents as recent as 2023, and she had given money to minor's maternal grandmother to help her visit.

Mother reported she wanted to be there for minor. If the petition was granted, she would still want to be a part of minor's life. She "stated she is

not the same person she was five years ago. She has been sober for about nine months and is on a list for housing. She is willing to engage in a process to allow her to reenter [minor's] life" and was willing to work with a therapist to support future contact.

Minor, who was in second grade at the time, reported that she considered her family to be her parents, grandma and grandpa, uncles, and aunts. She named her parents as stepmother and father and called them " 'mom' " and " 'dad.' " Minor knew that stepmother is not her biological mother and that " 'Ryan' " is her mom. She did not remember the last time she saw mother but said she loved and missed her. The investigator stated minor presented as a confident and secure child raised in a stable home.

In sum, the investigator reported that mother had sporadic contact with minor in 2020 and 2021. In 2022 and 2023, mother did not reach out for contact until she learned of the petition. Mother had reported that in 2021, and in October 2023, she was denied phone contact with minor. She confirmed she moved to a different state around 2021 and returned to California in April 2023, but she did not reach out for contact until November 2023. The investigator concluded that mother neither provided financial support nor communicated during the statutory time period.

The contested evidentiary hearing, which had been continued for various reasons, was held on July 10, 2024. No reporter was present. According to the clerk's minutes, mother, father, stepmother, and the process server testified. The minutes do not reflect the substance of their testimony. The parties stipulated to the admission of the investigator's report and did not cross-examine the investigator. The court also admitted into evidence the communication timeline, text conversations between father and mother, father's cell phone log, and photographs. The court marked and identified

7

the special interrogatories stepmother had propounded, and mother's responses thereto, but it did not admit them into evidence. The court also marked and identified, but did not admit into evidence, mother's 2023 rehabilitation program exit report and discharge summary.

At the conclusion of the hearing, the court granted stepmother's petition to declare minor free from mother's parental custody and control. In the order, the court found, among other things, that the representations in the petition were true; the investigator recommended to declare minor free from the custody and control of mother; father had consented to adoption by stepmother; and there was clear and convincing evidence that minor should be declared free from mother's parental control, in that she left minor in the care and custody of father for a period of over one year without any provision for minor's support and with the intent to abandon minor. According to the minutes, the court stated that the evidence demonstrating mother's intentional failure to make contact and failure to provide support for one year was done with the intent to abandon minor.

## II. DISCUSSION

### A. General Legal Principles

"Section 7800 et seq. governs proceedings to have a child declared free from a parent's custody and control. The purpose of such proceedings is to promote the child's best interest 'by providing the stability and security of an adoptive home.' (§ 7800.) The statute is to 'be liberally construed to serve and protect the interests and welfare of the child.' (§ 7801.)" (*Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1009–1010.)

A court may declare a child free from a parent's custody and control if the parent has abandoned the child. (§ 7822.) Relevant here, abandonment occurs when "[o]ne parent has left the child in the care and custody of the

8

other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).) Thus, a finding of abandonment is appropriate when three main elements are met: (1) the child must have been left with another; (2) without provision for support or without communication from the parent for the one-year statutory period; and (3) with the intent on the part of the parent to abandon the child. (*Adoption of Allison C.*, *supra*, 164 Cal.App.4th at p. 1010.) "The parent need not intend to abandon the child permanently; rather, it is sufficient that the parent had the intent to abandon the child during the statutory period." (*In re Amy A.* (2005) 132 Cal.App.4th 63, 68.)

Section 7822 includes a presumption: "The failure to provide . . . support, or failure to communicate is presumptive evidence of the intent to abandon. If the parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent or parents." (*Id.*, subd. (b).) If the party against whom the presumption operates produces " ' "evidence casting doubt on the truth of the presumed fact, the other party is no longer aided by the presumption. The presumption disappears, leaving it to the party in whose favor it initially worked to prove the fact in question." ' " (*In re Aubrey T.* (2020) 48 Cal.App.5th 316, 327.) Whether an intent to abandon existed for the statutory period, including the issue of whether the statutory presumption has been overcome, is a question of fact for the trial court. (*Ibid.*; *Adoption of A.B.* (2016) 2 Cal.App.5th 912, 922 (*A.B.*).)

"A trial court's finding of abandonment must 'be supported by clear and convincing evidence.' (§ 7821.) On appeal, the reviewing court examines the entire record to determine whether there is substantial evidence to support

9

the trial court's findings." (*In re Aubrey T.*, *supra*, 48 Cal.App.5th at p. 326.) In doing so, the reviewing court must account for the clear and convincing evidence standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.) It "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Id.* at p. 1005.) "Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at p. 996.) The appellate court does not reweigh the evidence. (*Id.* at p. 1008.) The determination "should 'be upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640.) We presume the trial court's judgment is correct. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Appellant bears the burden of establishing insufficient evidence to support the court's findings. (*A.B.*, *supra*, 2 Cal.App.5th at p. 923.)

Here, there is no record of the oral proceedings of the July 10, 2024, contested evidentiary hearing.[3] However, this compels neither a conclusion

---

[3] While all prior hearings were reported and are part of the record, no reporter was present at the July 10, 2024 hearing. Nor did mother provide an agreed or settled statement. (See Cal. Rules of Court, rules 8.407(b), (d), 8.416.) Nearly three months after the record was filed and mother's appellate counsel was appointed, and one day before mother's opening brief was due—which deadline had already been extended twice—in January 2025, mother filed an application for permission to prepare a settled statement in

that mother has lost the ability to show there is insufficient evidence to support the court's order nor a conclusion that mother's challenge to the sufficiency of the evidence must fail. (See *In re Christina P.* (1985) 175 Cal.App.3d 115, 130.) Nor do the parties assert these arguments. "[W]here there is no reporter's transcript of a [Civil Code] section 232 [section 7822's predecessor] hearing and the clerk's transcript reveals a substantial likelihood that there is insufficient evidence to warrant granting the petition reversal is compelled." (*Ibid.*; see also *id.* at pp. 130–137 [the evidence in the clerk's transcript, namely the investigator's report, was insufficient to support the termination of parental rights].) As discussed *post*, because the record does not reveal a likelihood that there is insufficient evidence to support the trial court's decision to grant stepmother's petition, the lack of a record of the oral proceedings from the contested hearing does not compel reversal.

## B. Intent to Abandon Minor

The sole element under section 7822, subdivision (a)(3), which mother challenges is the intent to abandon minor. It is undisputed that mother left minor with father without provision for support and without communication for more than the one-year statutory period—from February 2022 through October 2023. This constitutes presumptive evidence of mother's intent to

---

the trial court for the July 2024 contested hearing and request for an extension of time to file her opening brief. This court denied mother's request based on the expedited timelines for this appeal governed by California Rules of Court, rule 8.416. In the order, this court stated that mother was free to seek a settled statement in the trial court and, if she did, she could file a supplemental brief based on its contents. Mother has not filed a supplemental brief and neither party has given any indication that a settled (or agreed) statement was sought in the trial court.

11

abandon minor. (See § 7822, subd. (b).) Mother argues, however, that substantial evidence in the record rebuts this presumption. It is unclear from the record whether the court concluded that mother failed to overcome this presumption or concluded that mother had done so but that stepmother, without the aid of the presumption, proved mother's intent.

Either way, we conclude that substantial evidence in the record supports the court's finding that mother intended to abandon minor for at least one year. The investigator's report[4] and the communication timeline demonstrate the following: After the December 2018 custody and visitation order, mother spent five months in sober living houses attempting to treat her drug addiction. But she then stopped treatment and struggled with substance abuse for a number of years. In 2021, she moved to Utah and only informed father after she had moved. There were nearly two years—from January 2022 (when mother had her last communication with minor) to early November 2023 (when mother texted father requesting communication with minor)—where mother did not attempt to contact minor. Mother returned to California in April 2023 but did not contact father until November 2023, right before stepmother filed her petition. We agree with stepmother that mother may not have intended to abandon minor permanently, but this evidence demonstrates an intent to abandon minor for more than the one-year statutory period. (See *In re Amy A.*, *supra*, 132 Cal.App.4th at p. 68.)

Mother argues she did not intend to abandon minor. Rather, her intention was to give father physical custody of minor while she addressed

---

[4] The contents of this report are part of the evidence considered at the contested hearing. (§ 7851, subd. (d) ["The court shall receive the report in evidence and shall read and consider its contents in rendering the court's judgment."].)

her substance abuse issues and got her life back together. Mother relies on *In re H.D.* (2019) 35 Cal.App.5th 42 (*H.D.*) to support her argument, but we are not persuaded. In *H.D.*, the mother left her daughters in the care of their father while she sought substance abuse rehabilitation. (*Id.* at pp. 45–46.) She agreed to give the father temporary sole custody and, subsequently, the father was granted sole legal and physical custody. (*Id.* at p. 46.) For the following year, the mother underwent substance abuse treatment, after which she sought to modify the custody order. (*Ibid.*) At the hearing on the stepmother's section 7822 petition, the mother testified she did not intend to abandon her daughters but had wanted to ensure she would not relapse before she reentered their lives. She had recently moved to live in the same city as them and reported that she had been sober for over one year. (*Id.* at pp. 48–49.) The trial court concluded that while mother had not intended to permanently abandon her daughters, she failed to communicate with or financially support them for more than one year, demonstrating she intended to abandon them during that period. (*Id.* at p. 49.)

The appellate court in *H.D.* reversed, concluding that the trial court erred by relying solely on the presumption of intent and "ignor[ing] the overwhelming undisputed evidence [the] mother actually never intended to abandon her daughters and was actively working to reunite with them." (*H.D.*, *supra*, 35 Cal.App.5th at p. 53.) She had testified she let the father have custody only for so long as it took her to treat her addictions, and as soon as mother was clean and sober, she "wasted no time" in returning to court to seek custody. (*Id.* at p. 52.) Additionally, while she had not contacted her daughters for over a year, the evidence demonstrated she was unable to do so, not that she did not want to. She had initially tried to maintain contact with her daughters but the father did not want them to

13

interact with her due to her addictions. Eventually, the mother stopped trying to contact her daughters and focused on getting healthy. (*Id.* at pp. 46, 52.)

*H.D.* is distinguishable. While this matter may parallel *H.D.* for the first five months following the December 2018 custody order—when mother lived in sober housing and attempted to treat her addiction—the circumstances thereafter diverge from *H.D.* The "weightiest evidence of intent" is "mother's actions." (*H.D.*, *supra*, 35 Cal.App.5th at p. 52.) Here, as discussed *ante*, mother did not remain clean, moved to a different state, and did not contact father. When she returned to California, she moved to a different county than where father and minor resided, did not seek to modify the custody order, and delayed in contacting father. This is unlike the mother in *H.D.*, who demonstrated "diligence in treating her addiction[]" and, after becoming and remaining sober, "wasted no time in returning to family court and seeking to regain custody." (*Id.* at pp. 52–53.)

Mother also asserts that she attempted to maintain communication with minor but was denied contact, and that she "had always tried to maintain contact with father." She reported to the investigator that the communication timeline was accurate and confirmed the lack of contact listed from 2022 forward. But she also reported that she attempted contact during this time and received no response. She was unable, though, to provide written evidence demonstrating her attempts at contact. Mother also relies on her special interrogatory responses. Because her responses were not admitted into evidence at the contested hearing, we do not consider them. In any event, assuming the court had admitted into evidence mother's interrogatory responses, they do not sustain her burden of establishing insufficient evidence. (See *A.B.*, *supra*, 2 Cal.App.5th at p. 923.) In mother's

responses, she stated that during periods in 2021 she contacted father and asked to speak with minor, but she was not allowed to talk to her.  Mother stated that during the winter of 2022-2023, she had video calls with minor once a week until father stopped allowing further calls, after which she "stopped trying and relapsed again."  Mother stated she had "been refused phone calls with [her] daughter."  (Boldface omitted.)

To the extent there is evidence that mother attempted to contact minor during the statutory period, there is also evidence to the contrary.  Father reported to the investigator that he never kept minor from mother.  The communication timeline—which mother reported to the investigator was accurate—reflected that father received no contact from mother for more than one year between 2022 and 2023.  When mother texted father beginning in November 2023, father replied to her.  By citing evidence which might support a finding contrary to the court's, mother, in effect, suggests that we reweigh the evidence.  As discussed *ante*, in applying the substantial evidence standard of review, we view the evidence in the light most favorable to the court's finding, make all reasonable inferences from the evidence, and resolve all conflicts in support of the finding.  (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 996.)  We do not consider the credibility of the witnesses or reweigh the evidence.  (*Id.* at p. 1008; *A.B.*, *supra*, 2 Cal.App.5th at pp. 922–923.)  Accordingly, we must affirm an order that is supported by substantial evidence even if other evidence supports a contrary conclusion.  (See *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Mother also asserts that by the July 2024 contested hearing, she had been clean and sober for one year, citing her treatment program exit report and discharge summary from November 2023.  These documents were not admitted into evidence at the contested hearing and, therefore, we do not

15

consider them.  Even if they had been admitted into evidence, while mother's efforts to get clean in 2023 are admirable, her actions fall outside the relevant statutory period.  (See *A.B.*, *supra*, 2 Cal.App.5th at p. 922 [the one-year period of abandonment in § 7822, subd. (a)(3), is not limited to the year immediately preceding the filing of the petition to terminate parental rights]; see also *id.* at p. 924 [" ' "[t]he reality is that childhood is brief; it does not wait while a parent rehabilitates . . . herself" ' "].)  In appropriate cases, a parent's actions outside the statutory period may speak to their intent during it.  (See *H.D.*, *supra,* 35 Cal.App.5th at p. 52 [indicating "weightiest evidence of intent . . . was mother's actions" "[a]*fter* becoming and remaining sober," i.e., after the period of her alleged abandonment (italics added)].)  We have already explained how the circumstances here differ from those in *H.D.*  Any intent which may be inferred from mother's attempt to get clean in 2023 does not support a conclusion that there is no substantial evidence of her intent to abandon minor for at least one year between 2022 and 2023.

We conclude that substantial evidence supports the court's finding that mother intended to abandon minor within the meaning of section 7822, subdivision (a)(3).

## III.  DISPOSITION

The judgment is affirmed.

16

LANGHORNE WILSON, J.

WE CONCUR:

BANKE, ACTING P. J.

SMILEY, J.

A171519
*In re Adeline V.*